Frank ZIELINSKI

v.

PHILADELPHIA PIERS, Inc.

Civ. A. No. 15153.

United States District Court
E. D. Pennsylvania.

March 21, 1956.

Philip Dorfman, Philadelphia, Pa., for plaintiff.

John J. Dautrich, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

Plaintiff requests a ruling that, for the purposes of this case, the motor-driven fork lift operated by Sandy Johnson on February 9, 1953, was owned by defendant and that Sandy Johnson was its agent acting in the course of his employment on that date. The following facts are established by the pleadings, interrogatories, depositions and uncontradicted portions of affidavits:

1. Plaintiff filed his complaint on April 28, 1953, for personal injuries received on February 9, 1953, while working on Pier 96, Philadelphia, for J. A. McCarthy, as a result of a collision of two motor-driven fork lifts.

2. Paragraph 5 of this complaint stated that "a motor-driven vehicle known as a fork lift or chisel, owned, operated and controlled by the defendant, its agents, servants and employees, was so negligently and carelessly managed * * * that the same * * *

did come into contact with the plaintiff causing him to sustain the injuries more fully hereinafter set forth."

3. The "First Defense" of the Answer stated "Defendant * * * (c) denies the averments of paragraph 5 * * *."

4. The motor-driven vehicle known as a fork lift or chisel, which collided with the McCarthy fork lift on which plaintiff was riding, had on it the initials "P. P. I."

5. On February 10, 1953, Carload Contractors, Inc. made a report of this accident to its insurance company, whose policy No. CL 3964 insured Carload Contractors, Inc. against potential liability for the negligence of its employees contributing to a collision of the type described in paragraph 2 above.

6. By letter of April 29, 1953, the complaint served on defendant was forwarded to the above-mentioned insurance company. This letter read as follows:

"Gentlemen:

"As per telephone conversation today with your office, we attach hereto 'Complaint in Trespass' as brought against Philadelphia Piers, Inc. by one Frank Zielinski for supposed injuries sustained by him on February 9, 1953.

"We find that a fork lift truck operated by an employee of Carload Contractors, Inc. also insured by yourselves was involved in an accident with another chisel truck, which, was alleged, did cause injury to Frank Zielinski, and same was reported to you by Carload Contractors, Inc. at the time, and you assigned Claim Number OL 0153–94 to this claim.

"Should not this Complaint in Trespass be issued against Carload Contractors, Inc. and not Philadelphia Piers, Inc.?

"We forward for your handling."

7. Interrogatories 1 to 5 and the an-

swers thereto,[1] which were sworn to by defendant's General Manager on June 12, 1953, and filed on June 22, 1953, read as follows:

"1. State whether you have received any information of an injury sustained by the plaintiff on February 9, 1953, South Wharves. If so, state when and from whom you first received notice of such injury. A. We were first notified of this accident on or about February 9, 1953 by Thomas Wilson.

"2. State whether you caused an investigation to be made of the circumstances of said injury and if so, state who made such investigation and when it was made. A. We made a very brief investigation on February 9, 1953 and turned the matter over to (our insurance company) for further investigation.

"3. Give the names and addresses of all persons disclosed by such investigation to have been witnesses to the aforesaid occurrence. A. The witnesses whose names we have obtained so far are:

"Victor Marzo, 2005 E. Hart Lane, Philadelphia

"Thomas Wilson, 6115 Reinhardt St., Philadelphia

"Sandy Johnson, 1236 S. 16th Street, Philadelphia

"4. State whether you have obtained any written statements from such witnesses and if so, identify such statements and state when and by whom they were taken. If in writing, attach copies of same hereto. A. We have obtained written statements from Victor Marzo, Thomas Wilson and Sandy Johnson and these statements are in the possession of our counsel * * *, who advises that copies need not be attached unless we are ordered by the court to do so.

"5. Set forth the facts disclosed by such statements and investigation concerning the manner in which the accident happened. A. Sandy Johnson was moving boxes on Pier 96 and had stopped his towmotor when a towmotor operated by an employe of McCarthy Stevedoring Company with a person on the back, apparently the plaintiff, backed into the standing towmotor, injuring the plaintiff."

8. At a deposition taken August 18, 1953, Sandy Johnson testified that he was the employee of defendant on February 9, 1953, and had been their employee for approximately fifteen years.[2]

9. At a pre-trial conference held on September 27, 1955,[3] plaintiff first learned that over a year before February 9, 1953, the business of moving freight on piers in Philadelphia, formerly conducted by defendant, had been sold by it to Carload Contractors, Inc. and Sandy Johnson had been transferred to the payroll of this corporation without apparently realizing it, since the nature or location of his work had not changed.

10. As a result of the following answers to Supplementary Interrogatories 16 to 19, filed October 21, 1955, plaintiff learned the facts stated in paragraphs 5 and 6 above in the fall of 1955:

---

1. Plaintiff's argument that the answers to other interrogatories are misleading does not seem significant in view of the fact that plaintiff had the opportunity to frame these interrogatories (and could have filed requests for admissions) in a form that would have secured clearer answers and in view of the answer to Interrogatory 15. This order is being based on the inadequacy of the answer; and the inaccuracy of statements in the answers in the interrogatories, in view of the misleading effect of such inadequate answer and inaccurate statements under all the circumstances, including the inaccurate testimony of Sandy Johnson as described below.

2. See pages 2 and 3 of Deposition of August 18, 1953.

3. The applicable statute of limitations prevented any suit against Carload Contractors, Inc. after February 9, 1955, 12 P.S. § 34.

"16. With reference to your answer to Interrogatory #1, state the name and address of the person employed by you who first received notice of this accident on or about February 9, 1953. A. Joseph Nolan, Office Manager.

"17. With reference to your answer to Interrogatory #2, give the name and address of the person who conducted the investigation on February 9, 1953. A. Joseph Nolan, Office Manager.

"18. With reference to your answer to Interrogatory #2, state the name and address of the person who turned the matter over to (your insurance company) and state whether the matter was turned over by telephone or by letter. If by letter, attach copy of same hereto. A. Joseph Nolan gave the information to James L. Maher, Office Manager, of Carload Contractors, Inc., as a result of which the attached accident report signed by Jonathan Wainwright, Treasurer of Carload Contractors, Inc. was forwarded to (the insurance company) on February 10, 1953.

"19. State whether or not any person on your behalf submitted a written report of the accident to (your insurance company). If so, give the name and address of such person, the date of said written report and attach copy of same hereto. A. Yes, the attached report [4] dated April 29, 1953, was submitted to the insurance company after suit was started."

11. Defendant now admits that on February 9, 1953, it owned the fork lift in the custody of Sandy Johnson and that this fork lift was leased to Carload Contractors, Inc. It is also admitted that the pier on which the accident occurred was leased by defendant.

■ 12. There is no indication of action by either party in bad faith and there is no proof of inaccurate statements being made with intent to deceive. Because defendant made a prompt investigation of the accident (see answers to Interrogatories 1, 2, 16 and 17), its insurance company has been representing the defendant since suit was brought, and this company insures Carload Contractors, Inc. also, requiring defendant to defend this suit, will not prejudice it.[5]

■ Under these circumstances, and for the purposes of this action, it is ordered that the following shall be stated to the jury at the trial:

"It is admitted that, on February 9, 1953, the towmotor or fork lift bearing the initials 'P. P. I.' was owned by defendant and that Sandy Johnson was a servant in the employ of defendant and doing its work on that date."

This ruling is based on the following principles:

1. Under the circumstances of this case, the answer contains an ineffective denial of that part of paragraph 5 of the complaint which alleges that "a motor driven vehicle known as a fork lift or chisel (was) owned, operated and controlled by the defendant, its agents, servants and employees."

F.R.Civ.P. 8(b), 28 U.S.C. provides:

"A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. * * * Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder."

For example, it is quite clear that defendant does not deny the averment in paragraph 5 that the fork lift came

---

4. This is the letter quoted in paragraph 6 above.

5. See opinion of March 19, 1956, in Brennan, Administrator, v. Rooney & McGuigan, D.C., 139 F.Supp. 484.

into contact with plaintiff, since it admits, in the answers to interrogatories,[6] that an investigation of an occurrence of the accident had been made and that a report dated February 10, 1953, was sent to its insurance company stating "While Frank Zielinski was riding on bumper of chisel and holding rope to secure cargo, the chisel truck collided with another chisel truck operated by Sandy Johnson causing injuries to Frank Zielinski's legs and hurt head of Sandy Johnson." Compliance with the above-mentioned rule required that defendant file a more specific answer than a general denial. A specific denial of parts of this paragraph and specific admission of other parts would have warned plaintiff that he had sued the wrong defendant.

Paragraph 8.23 of Moore's Federal Practice (2nd Edition) Vol. II, p. 1680, says: "In such a case, the defendant should make clear just what he is denying and what he is admitting." See, Kirby v. Turner-Day & Woolworth Handle Co., D.C.E.D.Tenn.1943, 50 F.Supp. 469.[7] This answer to paragraph 5 does not make clear to plaintiff the defenses he must be prepared to meet. See Winslow v. National Elec. Products Corp., D.C.W.D.Pa.1946, 5 F.R.D. 126, 130–131.[8]

Under circumstances where an improper and ineffective answer has been filed, the Pennsylvania courts have consistently held that an allegation of agency in the complaint requires a statement to the jury that agency is admitted where an attempt to amend the answer is made after the expiration of the period of limitation. See Burns v. Joseph Flaherty Co., 1924, 278 Pa. 579, 582–583, 123 A. 496; Boles v. Federal Electric Co., 1926, 89 Pa.Super. 160, 163–164. Although the undersigned has been able to find no federal court

decisions on this point, he believes the principle of these Pennsylvania appellate court decisions may be considered in view of all the facts of this case, where jurisdiction is based on diversity of citizenship, the accident occurred in Pennsylvania, and the federal district court is sitting in Pennsylvania. In the Boles case, the court adopted the opinion of Judge Finletter, of the lower court, which contained this language, 89 Pa.Super. at pages 163–164:

"A general denial controverts the paragraph as a whole, and would be quite truthful, if but a fraction of the allegations answered were incorrect. (Citing cases.)

"The denial that any employe of the defendant directly or indirectly caused the injury might mean, either that the actor was not an employe of the defendant, or that, being the employe, he did not cause the injury.

"The agency, for the defendant, of the persons by whom the act was committed, that is, their employment by it was, in our opinion, properly taken by the trial Judge as an admitted fact. Of course, this carried with it no proof that these agents committed the act complained of, or that they were negligent, and the trial Judge so limited the admission, saying only that, 'The defendant, the Federal Electric Company, has admitted that it was its men who were doing this work.'

"Counsel for the defendant asked leave to amend 'to the effect that we were not in the premises at the time.' Passing the point that such an amendment would not have made the affidavit effective, we are of opinion that an amendment could not, with justice, have been permit-

---

6. See answers to Interrogatories 1, 2, 16 and 18.

7. Cf. United States v. Long, D.C.D.Neb. 1950, 10 F.R.D. 443.

8. In the Winslow case, 5 F.R.D. at page

129, Judge Gourley makes clear that the existence of a poorly drawn complaint to which defendant has not objected under F.R.Civ.P. 12 is no ground excusing defendant from filing an answer in compliance with F.R.Civ.P. 8(b).

ted at this late date. Four years had elapsed since the accident, when the motion was made; and two years since the case was put at issue. In the meanwhile, the statute of limitations had run, and a suit against any other person was barred. In other words, the plaintiff through the careless pleading, if it was careless pleading, of the defendant was deprived of all chance to recover for the serious injuries he had suffered. There is reason for requiring from a defendant, in such a case as this, a prompt and certain statement of his relation to the individual whose negligence causes injury to a plaintiff. The employment of such a person, his, and his immediate employer's, relation to the work in question, are matters nearly always unknown to the injured person. Whether the immediate actor is working on his own account, or is agent for a third person, and who that third person is, and also the latter's relations to the work, depend so often upon private contracts, that the injured party is at a loss to know who, in fact, is at fault."

█ 2. Under the circumstances of this case, principles of equity [9] require that defendant be estopped from denying agency because, otherwise, its inaccurate statements and statements in the record, which it knew (or had the means of knowing within its control) were inaccurate, will have deprived plaintiff of his right of action.

If Interrogatory 2 had been answered accurately [10] by saying that employees of Carload Contractors, Inc. had turned the matter over to the insurance company,[11] it seems clear that plaintiff would have realized his mistake. The fact that if Sandy Johnson had testified accurately, the plaintiff could have brought its action against the proper party defendant within the statutory period of limitations is also a factor to be considered, since defendant was represented at the deposition and received knowledge of the inaccurate testimony.

█ At least one appellate court has stated that the doctrine of equitable estoppel will be applied to prevent a

---

It should be noted that the Pennsylvania courts have consistently granted relief to a party to avoid a forfeiture of his rights resulting from neglect of his attorney. Fuel City Mfg. Co. v. Waynesburg Products Corp., 1920, 268 Pa. 441, 444–445, 112 A. 145; National Finance Corp. v. Bergdoll, 1930, 300 Pa. 540, 151 A. 12; Horning v. David, 1939, 137 Pa.Super. 252, 8 A.2d 729. In the Fuel City Mfg. Co. case, the court stated the rule as follows at page 444 of 268 Pa., at page 146 of 112 A.:

"It is well settled in Pennsylvania, that where application is promptly made, a reasonable explanation or excuse for the default offered, and a defense shown upon the merits, relief will be granted from a judgment entered by default, as a result of the mistake or oversight of counsel."

Although plaintiff's counsel might have filed requests for admission or drawn his interrogatories more carefully, these cases indicate that a court should not permit a forfeiture of plaintiff's rights of action in a case such as this, particularly where the same insurance company, which insures both the defendant of record and the corporation which should have been made party defendant, received prompt notice of the suit.

10. At least one federal district court case has suggested that a contempt proceeding under 18 U.S.C. § 401 is the proper procedure to compensate the attorneys for one party who had been misled to their pecuniary damage by inaccurate answers to interrogatories. It suggested the imposition of a fine to be paid as civil liability to the attorneys for the complaining party, relying on Fox v. Capital Co., 1936, 299 U.S. 105, 109, 57 S.Ct. 57, 81 L.Ed. 67. See, Crosley Radio Corp. v. Hieb, D.C.S.D.Iowa 1941, 40 F.Supp. 261, 263.

11. Pages 73 and 85 of the depositions of October 14, 1955, indicate that the answer to Interrogatory 2 was also inaccurate in saying that defendant made the investigation of the accident; but actually the employees of Carload Contractors, Inc. made the investigation.

party from taking advantage of the statute of limitations where the plaintiff has been misled by conduct of such party. See, Peters v. Public Service Corporation, 132 N.J.Eq. 500, 29 A.2d 189, 195 (1942).[12] In that case, the court said, 29 A.2d at page 196:

> "Of course, defendants were under no duty to advise complainants' attorney of his error, other than by appropriate pleadings, but neither did defendants have a right, knowing of the mistake, to foster it by its acts of omission."

This doctrine has been held to estop a party from taking advantage of a document of record where the misleading conduct occurred after the recording, so that application of this doctrine would not necessarily be precluded in a case such as this where the misleading answers to interrogatories and depositions were subsequent to the filing of the answer, even if the denial in the answer had been sufficient. See, J. H. Gerlach Co., Inc. v. Noyes, 1925, 251 Mass. 558, 147 N.E. 24, 26–27, 45 A.L.R. 961; East Central Fruit Growers, etc., v. Zuritsky, 1943, 346 Pa. 335, 338, 30 A.2d 133.

Closely related to this doctrine is the principle that a party may be estopped to deny agency or ratification. See Section 103 of Restatement of Agency and Hannon v. Siegel-Cooper Co., 1901, 167 N.Y. 244, 60 N.E. 597, 52 L.R.A. 429.

■ Since this is a pre-trial order, it may be modified at the trial if the trial judge determines from the facts which then appear that justice so requires. See, Smith Contracting Corp. v. Trojan Const. Co., Inc., 10 Cir., 1951, 192 F.2d 234, 236, and cases there cited; cf. Fernandez v. United Fruit Co., 2 Cir., 1952, 200 F.2d 414.[13]

---

12. When inaccurate statements are made under circumstances where there is foreseeable danger that another will rely on them to his prejudice, and he does in fact rely thereon, such statements are sufficient to invoke this doctrine even though fraud is not present. Chemical Nat. Bank of New York v. Kellogg, 1905, 183 N.Y. 92, 75 N.E. 1103, 2 L.R.A.,N.S., 299; Church of Christ v. McDonald, 1943, 180 Tenn. 86, 171 S.W.2d 817, 821, 146 A.L.R. 1173; cf. Reifsnyder v. Dougherty, 1930, 301 Pa. 328, 334–335, 152 A. 98.

13. See also Dictograph Products Co., Inc., v. Sonotone Corp., 2 Cir., 1956, 230 F. 2d 131, pointing out that one federal judge may always reconsider the ruling of another federal judge of the same court in his discretion.