Nelson H. WEADE, Appellant,

v.

TRAILWAYS OF NEW ENGLAND,
INC., Appellee.

No. 17541.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 16, 1963.

Decided Nov. 14, 1963.

Mr. Harry E. Taylor, Jr., Washington, D. C., with whom Messrs. Richard V. Waldron and Robert S. Ernst, Washington, D. C., were on the brief, for appellant.

Miss Betty Jane Southard, Washington, D. C., with whom Messrs. G. Kibby Munson and Maxwell A. Howell, Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

PER CURIAM.

This is an appeal from a summary judgment for the defendant-appellee in a negligence case, given on findings that the driver of the bus which collided with the plaintiff-appellant's automobile was an employee of Safeway Trails, Inc., and at the time of the collision was driving the bus over its franchise; and that the defendant-appellee Trailways of New England, Inc., was not the owner or operator of the bus, that the driver was not its employee or agent, and that the bus was not being operated in its business.

The plaintiff-appellant urges that the defendant-appellee Trailways of New England, Inc., and the firm of counsel representing it conspired with Safeway Trails, Inc., to deceive by withholding from the District Court and from the plaintiff-appellant until well after the statute of limitations had run against Safeway Trails, Inc., the fact that the defendant-appellee was not a proper party defendant; that the defendant-appellee is estopped by its actions to assert that it is not a proper party defendant; and that Safeway Trails, Inc., is estopped to plead the statute of limitations and should be added as a party defendant. The District Court, however, made no findings and conclusions on these points, which appear on the record before us to raise substantial issues of fact and law.[1]

---

1. We do not mean, of course, to intimate any opinion as to whether the allegations made by plaintiff-appellant, as presented to the District Court and to us, are true

In our view, the present record does not support the suggestion that the general denial in defendant-appellee's answer "was the plainest kind of notice to Weade that he had sued the wrong corporation." The relevant paragraph of the complaint includes allegations of date, place, injury, identity of bus driver, identity of bus owner and operator, collision, negligence of driver, negligence of company, and driver's status as agent, servant, or employee. Defendant-appellee's denial of "each and every allegation" of this paragraph, rather than a specific admission of certain allegations, positive denial of others, and denial of others only on the basis of lack of knowledge or information sufficient to form a belief, was, especially in the light of the failure to move immediately for summary dismissal, hardly calculated to give "plain notice." And defendant-appellee's later answers to plaintiff-appellant's interrogatories tend to suggest that defendant-appellee knew plaintiff-appellant did not have such notice.

The case is therefore remanded to the District Court with directions to vacate the judgment entered, to make findings of fact and conclusions of law as to the points mentioned, and to enter judgment as it may then be advised. The District Court may in its discretion take further pertinent evidence.

In deciding whether or not plaintiff-appellant is entitled to any relief, the District Court should consider, *inter alia*, the possible applicability of such authorities as the following: Rules 8 (b), 8(c), 8(d), 11, 12(h), 15(c) and 33 of the Federal Rules of Civil Procedure; 18 U.S.C. § 401; 28 U.S.C. § 1927; Zielinski v. Philadelphia Piers, Inc., 139 F. Supp. 408 (E.D.Pa.1956); Denver v. Forbes, 26 F.R.D. 614 (E.D.Pa.1960); Meltzer v. Hotel Corporation of America, 25 F.R.D. 62, 64 (N.D.Ohio 1960) (on motion for leave to amend complaint); Caulfield v. Bethlehem Steel Corp., 195 F.Supp. 360 (E.D.Pa.1961); Alexander v. Alexander, 140 F.Supp. 925, 929–930 (W.D.S.C.1956); Fifth & Walnut, Inc. v. Loew's Inc., 76 F.Supp. 64, 67 (S.D.N.Y.1948); American Automobile Ass'n v. Rothman, 104 F.Supp. 655 (E.D.N.Y.1952); Crosley Radio Corp. v. Hieb, 40 F.Supp. 261 (S.D.Ia.1941); Prosser on Torts 529–30 (2d ed. 1955).

So ordered.

WILBUR K. MILLER, Circuit Judge (dissenting).

On November 10, 1959, Nelson H. Weade sued Trailways of New England, Inc., and Henry M. Warwick in the United States District Court for the District of Columbia for $100,000 damages for injuries alleged to have been sustained by him on July 9, 1957, when a car he was driving collided with a bus operated by Warwick and alleged to have been "owned and operated or controlled" by Trailways of New England. The latter answered December 2, 1959, denying that the bus in question was owned, operated or controlled by it.

In 1960 interrogatories and answers thereto were filed, but in December of that year the complaint was dismissed under local Rule 13[1] for want of prose-

---

or false. Further proceedings in the District Court, as directed herein, may show that they are unfounded and unjustified.

1. At that time the pertinent portion of District Court Rule 13 read as follows:
"DISMISSAL FOR FAILURE TO PROSECUTE; ENTRY OF DEFAULT FOR FAILURE TO PROCEED.
"(a) CLERK TO WARN DILATORY PARTY; DISMISSAL WITHOUT PREJUDICE; NOTICE OF. If a party seeking affirmative relief fails for five months, from the time action may be taken, to comply with any

law, rule or order requisite to the prosecution of his claim, or to avail of any right arising through the default or failure of an adverse party, or to file a Certificate of Readiness under Rule 11(d) within six months from the date the action is called on the call of the civil calendar, the clerk shall warn the dilatory party by mail that his claim will stand dismissed if he fails to comply with this rule, making a note in the docket of the mailing; and if the delinquency continues for six months the complaint, counter-claim, cross-claim or third party complaint of said party, as the case

cution. Early in 1961 the case was reinstated as to Trailways of New England, but was dismissed as to Warwick, and on March 23 the cause was certified to the ready calendar. Nothing further was done in 1961. (Why the cause was not again dismissed under local Rule 13 does not appear.) Pre-trial proceedings were conducted in March, 1962, at which Weade again asserted the bus was owned, operated or controlled by Trailways of New England, and the latter claimed it "neither was the owner, operator, nor otherwise had control of the bus involved in the collision and otherwise was in no way connected to this accident." Thus the issue on that subject formed by the pleadings in 1959 was reaffirmed in 1962.

On the following September 25 Trailways of New England moved for summary judgment for the following reasons:

" * * * (1) that Trailways of New England, Inc., never has, does not now and on the date alleged in the complaint did not operate its bus line south of New York City but that at all times, as its name clearly indicates, has operated its bus line within the New England area pursuant to Certificates of Public Convenience and Necessity duly issued to it by the Interstate Commerce Commission, all copies of which,

duly certificated by the Secretary of said Commission as were in effect at that time, are annexed hereto as Exhibit A; (2) that Trailways of New England, Inc. does not operate within the District of Columbia and was not involved in any collision or accident with plaintiff as alleged in its complaint or otherwise, but that the accident of which plaintiff complains was with the bus of another line all as set forth in Exhibits B, C and D annexed hereto; (3) that defendant neither owned nor operated, either directly or through an agency or otherwise, the bus involved in the alleged accident; that all of these facts have been known to plaintiff or his representative for some very considerable time and resulted in a judgment in favor of this same defendant in a companion action brought in the Municipal Court, D. C. to recover property damage sustained by plaintiff's automobile as is evidenced by a certified copy of that judgment annexed hereto as Exhibit E."

The exhibits referred to were attached, together with substantiating affidavits.

As required by a local rule,[2] the motion for summary judgment was also accompanied by the following statement of material facts as to which Trailways of

---

may be, shall stand dismissed without prejudice, whereupon the clerk shall make entry of that fact and serve notice thereof by mail upon every party not in default for failure to appear, of which mailing he shall make an entry.

"(b) FAILURE TO WARN; EFFECT. A failure of the clerk to give the warning as above provided will not affect the running of the six months' period or otherwise relieve a party from operation of this rule."

2. District Court Rule 9(h) is as follows:
"(h) MOTIONS FOR SUMMARY JUDGMENT. In addition to the points and authorities required by subparagraph (b) of this Rule there shall be served and filed with each motion for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure a statement of the material facts as to which the moving party contends there is no genuine issue.

"Any party opposing the motion, may, not later than three days prior to the hearing, serve and file a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

"In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion."

New England contended there was no genuine issue:

"1. On July 9, 1957 at the intersection of New York Avenue and Bladensburg Road, N. E., there was a collision between an automobile operated by plaintiff and a bus operated by one Henry M. Warwick.

"2. Henry M. Warwick was employed by Safeway Trails, Inc. and was operating the bus under the franchise of Safeway Trails, Inc., an interstate carrier of passengers by motor bus operating generally along the east coast between New York City and Washington, D. C.

"3. The bus in question was owned by the Tennessee Coach Company.

"4. Trailways of New England, Inc. is an interstate carrier of passengers by motor bus operating in the New England area; the southernmost point which it serves is New York City.

"5. Trailways of New England, Inc. was neither the owner nor the operator of the bus involved in the accident; Henry M. Warwick was not its agent, servant or employee; the bus was not being operated in the business of Trailways of New England, Inc."

On October 1, 1962, Weade filed an opposition to the motion for summary judgment which contained no statement of any material facts as to which he contended there was a genuine issue necessary to be litigated, except the following allegation:

"e. Trailways of New England, Inc. was doing business in the District of Columbia on the date of the accident, and public records will show this to be a fact and that this fact was known to counsel for defendant herein."

An affidavit and copies of official records filed in support of the motion for summary judgment showed, however, that Trailways of New England was not doing business in the District of Columbia on the date of the accident, so the District Court could properly disregard the unsupported allegation to the contrary. Weade also pleaded in his opposition that Trailways of New England was estopped to claim it was not the proper party defendant, but nevertheless moved to make Safeway Trails, Inc., a party defendant. District Judge McLaughlin entered an order November 13, 1962, granting summary judgment to Trailways of New England and dismissing the complaint, which in effect denied the motion to amend the complaint by adding Safeway Trails as a party defendant. Weade appeals.

As Weade failed to controvert the material facts as to which Trailways of New England had stated there was no genuine issue, the District Court was justified in assuming that the facts as claimed by it were admitted to exist, because of the following portion of local Rule 9(h):

"In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are asserted to be actually in good faith controverted in a statement filed in opposition to the motion."

Weade's theory that Trailways of New England was estopped to deny it owned, operated or controlled the bus with which his car collided is based on his allegations that its attorneys in answering his interrogatories misled him into thinking he had sued the right defendant. They led him down the "primrose path," as his counsel put it in oral argument. But Weade chose that path for himself and not in reliance upon any statement or conduct of the appellee or its attorneys. The fact that Safeway Trails and Trailways of New England had a common director and employed the same attorneys of course did not justify the appellant in assuming they were in effect identical, and did not estop Trailways of New

England to assert they were separate and distinct corporate entities. I repeat, for emphasis, that in its answer filed December 2, 1959, Trailways of New England denied that it owned, operated or controlled the bus. That denial was never withdrawn, limited or modified in any manner; it was the plainest kind of notice to Weade that he had sued the wrong corporation.

As I have said, the statement of the pretrial proceedings filed March 2, 1962, long after he had received answers to his interrogatories, shows that even then Weade claimed the bus with which his car collided was "owned, operated or controlled" by Trailways of New England. So, in March, 1962, Weade was still not convinced that the New England company did not own, operate or control the bus. Plainly, neither the answers to the interrogatories nor anything else had misled him; he adhered throughout to the erroneous theory upon which he originally based his complaint.

On the question of estoppel against an erroneously-sued corporation to deny its non-participation in the tort, the majority cite Zielinski v. Philadelphia Piers, 139 F.Supp. 408 (E.D.Pa.1956), a case which is distinguishable on its facts. I suggest that Meltzer v. Hotel Corporation of America, 25 F.R.D. 62 (N.D.Ohio 1959), much more clearly approximates the situation before us here. Meltzer was somehow injured by a Christmas tree in the lobby of the Hotel Cleveland. He sued Hotel Corporation of America, saying it operated the hotel where he was injured.

In granting the motion of Hotel Corporation of America for summary judgment, Judge Connell said:

" * * * Plaintiff, in opposing the motion for summary judgment, does not dispute the fact that the Hotel Corporation of America, the named defendant in this cause, did not own or operate the Hotel Cleveland, or have control of its lobby, at the time of the injury. Rather, he avers that since the hotel was actually operated by the Hotel Corporation of Cleveland, a wholly-owned subsidiary of the named defendant, it (the named defendant), by means of an evasive answer, sought to and did mislead the plaintiff as to the actual defendant who would be answerable in damages if negligence were proved, thereby causing the statute of limitations to run on any claim plaintiff might have had against the Hotel Corporation of Cleveland. Because of this alleged deception, plaintiff petitions this Court to treat defendant's answer as a voluntary appearance, and to estop defendant from denying the operation and control of its subsidiary, the Hotel Corporation of Cleveland, thus placing it within the jurisdiction of this Court for purposes of this cause of action."

Our case differs in that in his opposition to the motion for summary judgment, Weade disputed the statement of Trailways of New England that it did not own, operate or control the bus. But, as I have shown, the motion for summary judgment was supported by affidavits and copies of official records showing the bus was operated and controlled, not by Trailways of New England, but by Safeway Trails, while Weade's statement to the contrary was wholly unsupported and was therefore ineffective.

As Weade does in this case, Meltzer argued that the Hotel Corporation of America had not clearly controverted his allegation of its operation and control because it had relied on a rather general denial, and had otherwise answered evasively. The court's opinion thus disposed of that contention (25 F.R.D. at page 64):

"Thus, in a form patently approved by Rule 8(b), defendant completely and clearly controverted the allegations that it owned or operated the Hotel Cleveland at the time of the accident, and that it was responsible for the maintenance of the Christmas tree in the lobby. Al-

though defendant's third and fourth defenses are based on the plaintiff's contributory negligence and assumption of risk, this does not support plaintiff in his claim that defendant answered evasively, for Rule 8(b), in pertinent part, reads, 'A party may also state as many separate claims or defenses as he has regardless of consistency, and whether based on legal or on equitable grounds or both.' Thus, although the several defenses might be considered inconsistent, they are clearly within the general intent of Rule 8."

A further illustration of the similarity between that case and this one is found when this excerpt from the *Meltzer* opinion is compared with the situation here:

"The injury occurred on December 27, 1956. Defendant's answer was filed on May 29, 1958, ten days after the filing of the complaint. This gave the plaintiff nearly six months to avoid the tolling of the Ohio Statute of Limitations (R.C. § 2305.10) by inquiring as to the real party defendant, and instituting appropriate proceedings. That plaintiff failed to appreciate the significance of the complete denial of paragraphs two and four of the complaint cannot be attributed to any lack of clarity in the answer."

In the present case the accident happened on July 9, 1957, and the complaint was not filed until November 10, 1959. Thus, before he sued, Weade had nearly two and a half years to learn the identity of the company which owned, operated and controlled the bus with which his car collided; and, after the answer denying ownership, operation or control was filed December 2, 1959, the appellant had more than six months to avoid the bar of limitation by inquiring as to the real party defendant and instituting appropriate proceedings.

On the day of the accident he observed that the bus was marked "T C 635." The name "Tennessee Coach Company" was plainly painted on it. With this information he could easily have learned from the office of the Interstate Commerce Commission that the bus was operated and controlled by Safeway Trails, Inc., lessee of Tennessee Coach Company. He could have ascertained from the annual report of Trailways of New England, on file in the Office of Superintendent of Corporations of the District of Columbia, that the type of business it conducted in the District was "Internal administrative matters relating to the interstate transportation of passengers by motor vehicle." Weade cannot complain that he was misled by his opponent concerning a matter about which he could easily have learned the facts from public records readily available. This is a well-recognized principle in the law of estoppel.

It is true that Meltzer was permitted to amend his complaint by changing the name of the defendant from "Hotel Corporation of America," the parent, to "Hotel Corporation of Cleveland," the wholly-owned subsidiary which operated the hotel. In that respect, this case differs widely because Weade sought to bring in an entirely *new* party defendant: it does not appear in the record that Safeway Trails was a subsidiary of Trailways of New England, either wholly or partly owned. It is held that in such circumstances, the amendment does not relate back to the time the original complaint was filed. Slater v. Keleket X-Ray Corp., 172 F.Supp. 715 (D.C.D.C. 1959).

Finally, the *Meltzer* court said, 25 F.R.D. at page 64:

"Since the pleadings and affidavits on file indicate clearly that the Hotel Corporation of America neither owned nor operated the Hotel Cleveland or its lobby at the time of the accident, there is no material issue of fact which would require the Court to hear the case on its merits. * * *"

I suggest that Judge McLaughlin correctly reached the same conclusion here.

In sum, an issue was tendered as to whether appellee owned, operated or controlled the bus, not only by appellee's initial pleading in 1959, but also by its pretrial statement in 1962. Only in those two ways are issues presented. Trailways of New England was within its rights in propounding and answering interrogatories to indicate and develop the additional defense of contributory negligence. It was not compelled to rely exclusively upon its denial of ownership, operation or control, and did not waive that denial by suggesting Weade was contributorily negligent.

The plain fact is that Weade sued the wrong party, and, even after he learned from its answer that he had done so, did not make the simple inquiry which would have enabled him to make Safeway Trails, the operator of the bus, a party defendant before the period of limitation had run in its favor.

My view is that this appeal comes very close to being frivolous. I would affirm the judgment of the District Court.