Charles K. DUNN, Appellant,

v.

a EVENING STAR NEWSPAPER COM-
PANY, a body corporate, and the Washing-
ton Post Company, a body corporate, Appel-
lees.

No. 4025.

District of Columbia Court of Appeals.

Argued March 27, 1967.

Decided Aug. 10, 1967.

Bradley G. McDonald, Washington, D.C., with whom Charles B. McInnis, Washington, D.C., was on the brief, for appellant. Betty Southard Murphy, Washington, D.C., also entered an appearance for appellant.

Patrick J. Attridge, Washington, D.C., with whom Cornelius H. Doherty, Washington, D.C., was on the brief, for appellee, The Evening Star Newspaper Co.

Harold A. Sakayan, Washington, D.C., for appellee, The Washington Post Co., James C. Gregg, Washington, D.C., was on the brief. Hugh Lynch, Jr., Washington, D.C., also entered an appearance for appellee, The Washington Post Co.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN (Associate Judge, Retired).

MYERS, Associate Judge:

Appellant suffered personal injuries when he became entangled in and tripped over a wire in the public thoroughfare in front of his home. He recognized the wire, twisted in the form of a loop, as that used to wrap bundles of newspapers dropped on the street for newsboys to deliver to neighborhood home subscribers. In filing suit against both The Evening Star Newspaper Company and The Washington Post Company[1] to recover damages sustained as a result of his fall, appellant based his theory of liability upon the alleged negligence of an employee or agent of either of the defendants in discarding a wire loop at a newspaper "drop" near his home,[2] in contravention of § 103 of the Traffic and Motor Vehicle Regulations for the District of Columbia,[3] where it created a hazard to

---

[1] The District of Columbia was also named as a co-defendant in the original complaint but was dismissed prior to trial.

[2] The Star "drop" was on the same side of the street, about 150 feet from appellant's house. The Post "drop," although somewhat nearer, was on the other side of the street.

[3] Section 103.
 (a) No person shall throw or deposit upon any street, highway, sidewalk, or alley, any glass bottle, glass, nails, tacks,

pedestrians. In line with this hypothesis, appellant served appellees with interrogatories. Objections to a number of them, which sought to elicit certain information categorized below, were sustained by the motions judge. Prior to trial similar interrogatories were again submitted, and again objections thereto were sustained. Subpoenas issued a few days before trial seeking the same information were quashed by the trial judge. At trial, at the close of appellant's evidence, appellees' motions for directed verdicts were granted on the basis of insufficiency of evidence. This appeal followed.

Although appellant alleges many errors, virtually all stem from the same contention —a claim that the trial judge abused his discretion in prejudicially restricting the discovery procedures provided for by the rules of the District of Columbia Court of General Sessions.

 In interpreting the applicable discovery rules, we are guided generally by decisions construing the Federal Rules of Civil Procedure, which are substantially the same as the rules of the trial court. Snyder v. Maryland Cas. Co., D.C.App., 187 A.2d 894, 895 (1963). The purpose of pretrial discovery is to reduce the possibility of surprise at trial by compelling the disclosure of relevant facts prior to trial; the rules are therefore to be accorded "a broad and liberal treatment." Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

 The scope of interrogatories under Rule 33 is identical with the scope of depositions under Rule 26(b) which denies discovery only as to matters privileged or irrelevant. Thus interrogatories may relate to any matter

"which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the [matter sought] will be inadmissible at the trial if [it] appears reasonably calculated to lead to the discovery of admissible evidence."

Relevancy to the subject matter is construed most liberally, to the point that discovery should be granted "where there is any possibility that the information sought may be relevant to the subject matter of the action." 2A Barron & Holtzoff, Federal Practice & Procedure § 647. A court must "interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." 4 Moore, Federal Practice ¶ 33.15. Because of the inherent discretion vested in the trial judge in ruling on objections to interrogatories, his decision will seldom be disturbed;[4] but where it is clear that the

---

wire, cans, or any other substance likely to injure any person, animal, or vehicle upon such street, highway, sidewalk or alley.

(b) Any person who drops, or permits to be dropped or thrown, upon any streets, highway, sidewalk, or alley, any destructive or injurious material, shall immediately remove the same or cause it to be removed.

4. See Snyder v. Maryland Cas. Co., D.C. App., 187 A.2d 894, 895 (1963). See also Leishman v. Radio Condenser Co., 167 F.2d 890 (9th Cir.), cert. denied, 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429 (1948); Newell v. Phillips Petroleum

Co., 144 F.2d 338 (10th Cir. 1944); 2A Barron & Holtzoff, Federal Practice & Procedure §§ 775-776; 4 Moore, Federal Practice ¶ 33.02. It was stated in United States v. Kohler Co., 9 F.R.D. 289, 291 (E.D.Pa.1949), that the purpose of the discovery rules was

"to leave their application to the discretion of the trial court—not, of course, an absolute discretion but one controlled and governed, not only by statutory enactments and the well established rules of the common law, but also by considerations of policy and of necessity, propriety and expediency in the particular case at hand."

matter sought is relevant, an appellate court will reverse where the denial of discovery is found to be an abuse of that discretion. See e. g., Zoellner v. Neumann, 1 A.D.2d 941, 150 N.Y.S.2d 31 (1956); Parham v. Hellebush, 263 App.Div. 965, 33 N.Y.S.2d 10 (1942).

The contested interrogatories submitted by appellant sought three categories of information: (a) the means by which the wires used by the two newspapers could be differentiated; (b) prior notice to the Star and the Post that a dangerous condition was being created by their newsboys; and (c) the possible existence of a "conspiracy" or combined effort to defeat the claims of appellant and others similarly injured.

(a)

 If there were no means by which the wires could be identified, then a simple negative answer would have been proper. If there was a method of identification, it would be most readily ascertainable by

appellees or their suppliers.[5] The fact that independent metallurgical or mechanical testing might have disclosed distinguishing characteristics in the wire used by the respective appellees does not abrogate their duty to supply such relevant information. O'Donnell v. Breuninger, 9 F.R.D. 245, 247–248 (D.D.C.1949). See also Holtzoff, New Federal Procedure & the Courts 73–74. The doctrine of joint tortfeasors espoused in Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948) and in Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944), never expressly approved or rejected in this jurisdiction, might well affect the newspapers' liability if the wires were in fact indistinguishable.[6]

(b)

 If appellees had issued instructions for the proper disposition of the wire loops after their removal from the newspaper bundles, this could well indicate that they had notice that a dangerous condition was being created by their agents or employees.

5. Objections were sustained to the following interrogatories, to which the answers might not only have provided appellant with relevant information, but might have furnished admissible evidence. E.g.,

"How can you identify the wire that was used by you in January, 1964, prior to January 24, 1964, to bind your newspaper bundles dropped in the 1800 block of Shepherd Street, N. W.?

"Is there any test, chemical, mechanical, expert or otherwise by which it is possible to determine and distinguish the wires which were used on newspaper bundles by The Washington Post and The Evening Star which were dropped at the intersection of 18th and Shepherd Streets, N. W., in January, 1964?"

The interrogatories we have set out here and infra are not to be considered the only interrogatories which we feel were erroneously denied; they serve merely as examples of the discovery sought.

6. In Ybarra v. Spangard, a patient injured during an operation was allowed to charge *res ipsa loquitur* against the attending surgeons, anesthesiologist and nurses, placing the burden upon them in-

dividually to exonerate themselves or be held jointly liable. Applying similar reasoning to a non-*res ipsa loquitur* situation, Summers v. Tice held liable as joint tortfeasors two hunters who had negligently fired shotguns simultaneously toward a third party who was injured by pellets from one of the blasts. The court there stated:

"When we consider the relative position of the parties and the results that would flow if plaintiff was required to pin the injury on one of the defendants only, a requirement that the burden of proof on that subject be shifted to defendants becomes manifest. They are both wrongdoers—both negligent toward plaintiff. They brought about a situation where the negligence of one of them injured the plaintiff, hence it should rest with them each to absolve himself if he can. The injured party has been placed by defendants in the unfair position of pointing to which defendant caused the harm. If one can escape the other may also and plaintiff is remediless. Ordinarily defendants are in a far better position to offer evidence to determine which one caused the injury." 199 P.2d at 4.

Interrogatories seeking this information are clearly relevant.[7]

 One interrogatory originally asking for information concerning other "wire-loop accidents" involving appellees was granted only after modification by the court, the trial judge limiting its scope to similar accidents on the same block of the same street. We feel such narrow, restricting modification was error. Not only might such prior occurrences be relevant to an investigation of the accident, but they might even be admissible to show notice of a dangerous condition caused by the continuing careless practices of appellees' employees in the course of their duties.[8]

(c)

 Appellant also charged appellees with conspiring unlawfully to defeat his cause of action for damages. We take no position as to the merits of this claim, but we are satisfied that the trial court is the proper forum to ventilate such charge. Cf. Miller v. Avirom, U.S.App.D.C. (decided June 28, 1967); Weade v. Trailways of New England, Inc., 117 U.S.App.D.C. 73, 325 F.2d 1000 (1963).

In our judgment the trial judge abused his discretion in sustaining objections to many interrogatories which were clearly relevant to the matters in issue, thereby prejudicing appellant in the trial of his suit. We therefore reverse and remand the case for a new trial, with directions that appellant be afforded an opportunity to make proper comprehensive discovery.[9]

Reversed and remanded for a new trial.

---

7. E.g., "Have any written or oral instructions been given to the newspaper boys concerning the procedure for the handling of wire loops when they are removed from your newspaper bundles?

"Have you ever instructed your newspaper boys to see to it that the wire or the wire loops placed on your newspaper bundles are not abandoned or left in the streets or sidewalks when they open the bundles?"

8. Evidence of prior accidents may be introduced to show a dangerous condition and notice of that condition to the party responsible for its creation and continuation. District of Columbia v. Armes, 107 U.S. (17 Otto) 519, 524–525, 2 S.Ct. 840, 27 L.Ed. 618 (1883); Frank R. Jelleff, Inc. v. Braden, 98 U.S.App.D.C. 180, 233 F.2d 671, 63 A.L.R.2d 400 (1956); Hecht Co. v. Jacobsen, 86 U.S.App.D.C. 81, 180 F.2d 13 (1950). But individualized prior acts of negligence are generally not admissible to prove that on a different occasion there was another act of negligence which was responsible for the injury in question. Small v. Pennsylvania R. Co., 65 App.D.C. 112, 80 F.2d 704 (1935); Fountaine v. Washington R. & Elec. Co., 42 App.D.C. 295 (1914).

The circumstances of the instant case present a hybrid situation—one which cannot be neatly categorized into either line of cases. The unity of circumstances required to show the existence of a dangerous condition as evidenced by a prior accident is almost necessarily absent here since wires negligently discarded may find themselves in any gutter, roadway or sidewalk. Thus, it would be highly unlikely for two such accidents to occur at the same spot. Unlike a dangerous condition such as an unsafe object or faulty facility, the presence of wires in the street is caused by the occasional or continued acts of one or more persons.

The *existence*, rather than the *cause*, of wire loops in the street is characteristic of a continuing dangerous condition. In most cases, individual acts of negligence breach a duty to only a single person or small group of persons. If, by good fortune, such negligent act does not lead to injury, the negligence expires and dissipates and cannot cause harm at some future time. However, wire loops negligently allowed to fall and remain in the street create a hazard that does not disappear until removed by human agency or destroyed through gradual disintegration by Nature. The creation of such a hazard breaches a duty to any person who nears the wires.

9. In the light of the disposition of this case, we need not discuss whether quashing of the subpoenas was proper.