**ALLRIGHT, INC., Appellant,**

v.

**William YEAGER et al., Appellees.**

**No. 16280.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 28, 1974.

Rehearing Denied July 25, 1974.

Tipton & Bishop, George M. Bishop, W. Timothy Lewis, Houston, for appellant.

Robert F. Hyatt, III, Houston, for appellees.

## ON SECOND MOTION FOR REHEARING

EVANS, Justice.

Appellees, William and Carol Yeager, recovered judgment on a jury verdict against Allright, Inc. in the amount of $1772.44, as damages resulting from the theft of their automobile from appellant's parking lot in downtown Houston. In our original opinion we affirmed the judgment of the trial court. On appellant's second motion for rehearing we have determined the case must be reversed and remanded; accordingly, we withdraw both our original opinion and our opinion on appellant's original motion for rehearing, and this opinion is substituted therefor.

Appellee, Mrs. Carol Yeager, a legal secretary with a downtown law firm, testified she had been parking on the lot in question for about a year. She testified that on days when there were cars lined up in front of her in the entrance lane of the lot she did not park her automobile and left her keys with the attendant; he then parked her car. She testified that on an average of about three days each week, she, rather than the attendant parked her automobile; that this depended upon whether there were cars in front of her when she drove in to the lot and whether she found a vacant space on the lot to park her car where she could lock it. She said the parking lot attendant made the determination of whether or not she should or should not leave the keys in her automobile; that it was normal procedure for the attendant to park her car if there were cars in front of her when she drove in to the lot.

In response to special issues the jury found that appellant had failed to keep a proper lookout for the custody of appellees' car; that it had failed to require proper identification of car ownership before re-

leasing the car; that it had failed to keep the car locked; that it had failed to keep the keys in a safe place; and that it had failed to keep a sufficient number of employees on the parking lot, all of which negligent acts were found to have proximately caused the loss. The jury also found that the car had been stolen by an unknown third party but failed to find that this had occurred after the lot closed for the evening.

In its first three points of error appellant contends the trial court erred in refusing to submit its requested special issues inquiring whether appellee Mrs. Yeager on the date in question had the option to park and lock her automobile and whether her failure to do so constituted negligence proximately causing the loss.

Appellant contends that the evidence established the parking lot was a "self-parking operation" where the customer parks his own car, locks it and takes the key; that appellee testified she parked and locked her car about three days out of every week and that she could have parked and locked the car if she had come to work earlier or if she had waited and had been late to work. Appellant also points to other testimony which it asserts raises fact issues as to whether appellee could have parked and locked her car on the date in question.

Mrs. Yeager testified when she drove into the lot there were about three cars lined up in front of her, and that the cars were just stopped there and did not have drivers in them. She testified that she pulled in behind the cars, got out of her car and was approached by the attendant. She said the attendant told her to leave her keys and he would park her car.

Once the parking lot attendant accepted entrustment of appellee's automobile, appellant became bound to exercise ordinary care for the safety of the vehicle during the bailment period. No issue was raised as to the authority of the parking

lot attendant to accept appellee's vehicle for parking and having accepted the automobile with the keys in it, appellant became responsible for it and was required to take such measures as were reasonably necessary to safeguard against its loss. Appellee was under no duty during such bailment period to ascertain whether the measures taken by appellant were adequate. Vollmer v. Stoneleigh-Maple Terrace, Inc., 226 S.W.2d 926 (Tex.Civ.App.—Dallas 1950, writ ref'd), wherein the court said:

> "While negligence of bailor contributing to the loss exonerates the bailee as a general rule, we find nothing in the facts and circumstances of this record to establish any such defense. After defendant hotel had invited the acceptance of its garage facilities on part of plaintiff, who paid the fee demanded, surely the former is in no position to claim that the car owner is equally at fault for loss of the bailed property while in bailee's possession, at least with respect to matters over which it had assumed the burden of exercising ordinary care, such a proper lookout for safety of car, safeguarding of automobile keys, chain across garage doors, and sufficiency of attendants. As appellant aptly points out, while the car was in possession of defendant the duty of care as between the parties rested solely upon it, plaintiff being relieved of further duties in connection with a proper lookout safeguarding of keys, etc.

> "Similarly, an issue of contributory negligence cannot be predicated upon knowledge by plaintiff of defendant's garage facilities and methods. It is well settled that liability of a garage man as bailee of an automobile is not affected by the owner's knowledge as to the manner in which or the place where the car is kept. Berry, The Law of Automobiles, sec. 5.524; Blashfield Encyclopedia of Automobile Law and Practice, Perm. Ed., § 5022; Huddy, Automobiles, sec. 202; Stevens v. Stewart-Warner Speedometer Corp., 223 Mass. 44, 111 N.E.

771; Sandler v. Commonwealth Station Co., 307 Mass. 470, 30 N.E.2d 389, 131 A.L.R. 1170."

■ Even if the issues requested by appellant had been answered favorably to it, such answers would not have established a defense upon which a judgment for appellant could have been based; the question of whether appellee had an alternative cause of action available to her prior to delivery of her car to appellant was simply not a controlling issue. We overrule appellant's first three points of error.

■ In appellant's fifth point of error it contends the trial court erred in sustaining appellee's objections to its request for admissions. Appellees' response to such request alleged that such request was abusive and oppressive in that appellees had previously answered eight legal size pages of written interrogatories; that the deposition of appellee had been taken, and that appellant had been afforded full opportunity for discovery. A review of the proceedings leads us to the conclusion that the trial court acted within its discretion in sustaining appellees' objections and in determining that appellees should not have been required to answer appellant's request for admissions. See McDonald, Texas Civil Practice, Vol. 2, Sec. 10.07, p. 554; Rule 169, Texas Rules of Civil Procedure. We overrule appellant's fifth point of error.

Appellant's points of error six, eight, nine, ten, eleven and twelve contend the trial court erred in overruling its motion for instructed verdict in that there was no evidence to support the jury's answers to the proximate cause issues. Appellant argues there was no evidence showing what happened to the automobile after it was parked on the lot; that there was no evidence that appellant failed to keep a proper lookout or that such failure was the proximate cause; that there was no evidence of any failure to require proper identification of car ownership or that

such was a proximate cause; that there was no evidence that appellant failed to keep the car locked as would have been done by a person using ordinary care or that such failure was a proximate cause; and that there was no evidence of appellant's failure to keep the keys in a safe place or to keep a sufficient number of attendants or employees on the parking lot, or that such failure was a proximate cause.

Appellee testified that she saw only one attendant on the lot that morning and that normally there were two attendants; there was testimony that the parking lot extended the entire length of the city block and that an estimated 150 to 200 cars were parked on it during the day. There was also testimony indicating the particular lot required two attendants; that the parking lot management permitted some of the customers to park their cars and leave their keys in the cars when the spaces were full and that there were no blockades put up at the entrances to the parking lot at closing time. Appellee further testified that when she parked her car on the lot and left the keys in her vehicle, the keys would normally be in the ignition when she returned for her car. She said when she worked past 6:00 or 6:30 p. m., the attendants would take her keys to the Allright garage across the street and that she would then go to that garage to obtain her keys. She said this was normal procedure and there was tesimony that many customers drove in and parked and walked off without receiving an identification stub; that if a car was left on the lot the keys would be transferred across the street. There was testimony that appellee's car was seen on the lot late that evening; however, there was no evidence as to whether the keys were transferred across the street on the evening in question or what happened to the keys. Finally, the testimony showed that upon returning to the lot and finding her automobile gone, appellee reported the car as having been stolen.

■ On the basis of the evidence presented, the jury could have reasonably inferred that appellant did not keep a proper lookout for the custody of appellee's automobile; that it failed to keep appellee's car locked; that it failed to keep the keys in a safe place and that it did not require proper identification from the person who removed appellee's car from the parking lot. The jury could have also inferred that appellant failed to keep a sufficient number of employees on the parking lot. We believe the evidence amply supports the jury's verdict with respect to the issues submitted and that the jury could reasonably determine that but for the acts of appellant the loss of the car would not have occurred and that the subsequent damage was a reasonably foreseeable consequence. These points of error are overruled.

■ Appellant's seventh point of error is that the trial court erred in permitting appellee's witness to testify as to the reasonable market value of the automobile when he was not qualified as an expert witness. The witness, Mr. Robert Isbell, a claims superintendent for State Farm Insurance, testified as to his experience in evaluating automobiles in an undamaged condition and also with respect to the salvage value of damaged cars but stated he had never personally bought or sold damaged automobiles. Appellant argues that the witness' testimony showed only that he had an opinion as to what a dealer would pay, as salvage value, for appellee's automobile and that this was only the wholesale value which was less than the reasonable market value. Mr. Isbell testified he had been a claims supervisor for nine years and had served seven years as a field claims man and that in such capacity he had had occasion to oversee work on a steady basis in repair shops and had also attended technical school. He said on many occasions he had been involved with losses to automobiles and in the disposition of salvaged or damaged automobiles; that he had familiarity by reason of his experience with the reasonable market value of new automobiles and in connection with handling insurance claims, had been in the

business of buying and selling used cars. He was permitted to give his opinion as to the reasonable cash market value of the automobile in question as between $2900.00 to $3000.00 and, after its damage, as to a reasonable market value of between $1100.-00 to $1200.00. We find appellant's objection goes merely to the weight of the witness' testimony and that the trial court did not err in permitting the witness to give his expert opinion. Appellant's seventh point of error is overruled.

Appellant's fourth point of error asserts the trial court erred in refusing to submit appellant's requested issue inquiring whether another company, Allright Houston Company, operated the parking lot in question on the date appellee's automobile was stolen. Appellant argues that this issue was raised by testimony of its general manager that on the date in question the lot was operated by Allright Houston Company, a different corporation from the appellant, Allright, Inc., and that at that time a parking stub was given to customers which said "Allright Houston Company."

The theft of appellee's automobile occurred on August 17, 1970; plaintiffs' original petition naming appellant, Allright, Inc., as defendant was filed on December 11, 1970. On January 5, 1971 appellees submitted written interrogatories to appellant which were answered by appellant's attorney as follows:

"Question 1: 'What is the correct name of the defendant referred to in Plaintiffs' Petition as Allright, Inc.?'

"Answer: 'Allright, Inc.'

". . . .

"Six: 'What was the correct street address of Defendant's parking lot on August the 17th, 1970?'

"Answer to Question 6: '1001 San Jacinto, Houston, Texas.'

"'. . . .

"Question No. 18: 'Did any of the defendant's employees lock plaintiff's ve-

hicle on said date? If so, give the name and address of said employee.'

"Answer to No. 18: 'No.'"

On May 3, 1972, appellee filed her first amended original petition alleging that appellee had driven her automobile onto the lot of appellant, Allright, Inc., at the address shown by appellant's response to interrogatories and that she had entered into a bailment contract with Allright, Inc. for the storage of her vehicle.

On June 26, 1973, approximately one month prior to the date of trial, appellant filed its second amended original answer alleging for the first time that on the date in question, the parking lot was owned not by appellant but by another corporation, Allright Houston Company; it also filed "amended" answers to interrogatories which similarly suggested that the parking lot was operated by Allright Houston Company and not by appellant, Allright, Inc.

Rule 168, Texas Rules of Civil Procedure, specifically imposes a duty upon the answering party to *seasonably* amend the answer to interrogatories if such party obtains information indicating the answer was incorrect when made. See also McDonald, Texas Civil Practice, 1970 Revised, Vol. 2, Sec. 10.02.21.

■ Appellant's original answers to appellees' interrogatories admitting that it was the operator of the lot on the date in question, established such fact until the answer was seasonably and properly amended or withdrawn. See Hardy v. DeLeon, 5 Tex. 211, 243 (Tex.Sup.1849); McCormick and Ray, Texas Law of Evidence, Vol. 2, Sec. 1127, page 25.

Appellant permitted more than two years to expire before notifying appellee that it intended to change its original answers and to allege that appellee had sued the wrong parking lot company. The statute of limitations would obviously be applicable to a suit brought against Allright Houston Company after that time lapse. In our

original opinion we stated that the matter of lot operation was peculiarly within appellant's own sphere of knowledge and concluded that appellee had the right to rely and obviously did rely upon appellant's original answers to interrogatories to establish this essential element of her case. We were of the opinion that due to the appellant's failure to seasonably amend its original answers, which resulted in appellee's prejudice, the trial court did not abuse its discretion in refusing to submit an issue on this question and in determining such fact to have been established by appellant's admission. See Dickson v. Stockman, 411 S.W.2d 610 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.); Zielinski v. Philadelphia Piers, Inc., 139 F.Supp. 408 (D. C.Pa.1956); Wright & Miller, Federal Practice & Procedure, 1970, Vol. 8, Sec. 2181, p. 575; Garza v. Garza, 191 S.W.2d 767 (Tex.Civ.App.—San Antonio 1945, n. w. h.), and Hercules, Inc. v. Eilers, 458 S. W.2d 221 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.).

After careful consideration of appellant's second motion for rehearing we have concluded that the judgment of the trial court must be reversed and remanded for further proceedings. The record reflects that during the course of trial, appellant was permitted, without objection, to offer testimony and to read into evidence its amended answers to interrogatories which raised the issue of whether Allright Houston Company, and not Allright, Inc., was the operator of the parking lot on the date in question. Furthermore, there was no pleading filed on behalf of appellee which placed appellant on notice that objection would be made to its amended answers. See Burket v. Delaware Drilling Corp., 435 S.W.2d 307 (Tex.Civ.App.—El Paso 1968, dism'd w. o. j.). Accordingly, insofar as the record reflects, there was conflicting testimony on the issue of the operation of the parking lot on the date in question; therefore, we find the trial court erred in refusing to permit appellant's requested issue on

this point and sustain appellant's fourth point of error.

The judgment of the trial court is reversed and remanded.