J. H. GERLACH COMPANY, INC. *vs.* FRANK A. NOYES.

Suffolk.    December 4, 1924. — March 2, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Estoppel.   Sale,* Conditional.   *Assignment.    Pledge.    Landlord and Tenant,* Agreement as to property affixed to the realty.

At an interview between an agent, sent to the owner of a building by one contemplating selling bowling alleys to a tenant for installation in the building, the owner asked the agent "about the security on the goods," and the agent replied: "we always sold on a lease or a conditional sale." The owner said nothing about having executed a lease of the premises, and specifically nothing about a provision in his lease that alleys to be erected on the premises should be deemed affixed to the realty and should not be removed except upon written order of the owner of the building. The contract of conditional sale afterwards was made and the alleys were installed with the knowledge of the owner of the building and without the vendor's knowing the provisions of the lease to the vendee. Several months later the contract was assigned and the notes given with it were indorsed and delivered to a creditor of the vendor as security without the assignment being recorded. Later the assignee indorsed and delivered the notes and delivered the contract unassigned to a trust company as collateral. After the termination of the tenancy of the vendee, he defaulted on his payments under the conditional sale, the trust company returned the notes to the assignee of the vendor, and such assignee made demand for the alleys upon the owner of the building, who refused to deliver them. The assignee, in behalf of and for the benefit of the vendor, then brought against the owner of the building an action of tort for conversion. There was a verdict for the plaintiff. *Held,* that

(1) Findings were warranted that the vendor relied upon the report of his agent that the defendant had remained silent when informed of the vendor's intention to erect alleys on the defendant's premises under a contract of conditional sale;

(2) The finding for the plaintiff on the whole case involved and required subsidiary findings that in the circumstances the defendant had a duty to speak, was silent, and that the vendor acted on that silence to his harm; and the defendant was estopped to rely on the provisions of his lease as against the vendor and his assignee;

(3) There was no evidence justifying a contention by the defendant that the vendor was careless in not ascertaining that there was a written lease of the premises to the vendee, and was negligent in not ascertaining the provisions of such lease;

(4) Since the right to retain title to personal property sold on a conditional bill of sale, which is or may become annexed to real estate, depends on the conditions which exist between the parties when the contract is made, and not upon changes which come into existence before performance, the plaintiff's rights were not affected by the fact that demand upon the defendant was not made until the termination of the vendee's tenancy;

(5) Although the assignment by the vendor to the plaintiff, being for security, was void as to all persons thereafter deriving title to the mortgaged chattels under or through the vendor because the assignment was not recorded under G. L. c. 255, § 1, the defendant had derived no title or interest in the mortgaged chattels and could acquire no title adverse to the vendor, and therefore could not dispute the right of the plaintiff to prosecute the action in his own name as the holder of the legal title for the benefit of the vendor.

Tort for the conversion of eight bowling alleys, John P. Magann and Frank C. Magann, copartners doing business under the firm name and style of J. P. Magann and Company, originally being plaintiffs, and J. H. Gerlach Company, Inc. their assignee, by amendment being substituted as plaintiff bringing the action in behalf of and for the benefit of J. P. Magann and Company. Writ dated December 16, 1916.

The action first was tried before *Bishop*, J., and after a verdict for the plaintiff in the sum of $4,780, exceptions by the defendant were sustained in a decision reported in 241 Mass. 69.

There was a second trial before *Whiting*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in his favor. The motion was denied. The defendant asked for thirty-six rulings. In his argument before this court, the defendant relied upon his exceptions to refusals to give the following rulings:

"1. Upon all the evidence, the jury should return a verdict for the defendant."

2c. The assent necessary to reconvert into personal property such of the bowling alleys as had become real estate by reason of the whole or any part of them being annexed to the realty before the execution of the conditional bill of sale from Peterson and Steele to Magann "must be in writing and signed by the owner of the real estate . . . [the defendant] because of the statute of frauds."

"6. In addition to the foregoing, the plaintiff must satisfy the jury that Mr. Magann was deceived by the silence of the defendant and his failure to disclose the said provision of said lease, and that he relied upon the report made to him by Mr. Arnet Taylor that the defendant had remained silent when informed of his, Magann's, intention to erect said alleys under a contract of conditional sale, by the terms of which the same were to remain personal property until full payment for the same."

"7. If the jury finds that Mr. Magann had reasonable cause to believe Steele and Peterson were to occupy the premises in which the alleys were to be erected under the provisions of a lease, it was his duty to exercise reasonable diligence in making inquiry as to the provisions of such lease, and if his failure to learn of such provisions was in consequence of his failure to make such inquiry, then the plaintiff is precluded from recovery in this action.

"8. If Mr. Magann took no interest in, nor steps to learn of the provisions of said lease, although he could have discovered the same by the exercise of reasonable diligence, he cannot now complain because of his failure to learn of the provisions thereof, and the plaintiff cannot recover in this action.

"9. Mr. Magann was bound to use due diligence in making inquiry of Steele and Peterson and of the owner of the premises in order to learn whether the premises in which the alleys were to be erected were leased to Steele and Peterson, and such provisions of said lease as would affect his rights to the alleys.

"10. Unless the sole reason for the failure on the part of Mr. Magann was due to the concealment of the provisions of the lease by the silence of Mr. Noyes, the plaintiff cannot recover.

"11. If the failure on the part of Mr. Magann to discover the provisions of said lease was due to his own indifference, the plaintiff cannot recover.

"12. The position taken by Mr. Magann upon the stand being that he did not care whether there was a lease of the premises or not, or what provisions it contained at the time of his dealings with Steele and Peterson, then the plaintiff cannot recover."

"25. This action cannot be maintained upon evidence tending to show a demand for and a refusal to permit the removal of the bowling alleys at a time when the same were incorporated into the building at 420 Broadway, Chelsea."

"33. The transfer by Magann to J. H. Gerlach Company, Inc., of the contract of conditional sale as collateral security for the obligations of Magann in 1916 constituted a mortgage, under the provisions of the St. 1915, c. 226, and not being recorded, is not valid against a person other than the parties thereto. . . . This would be equally true whether there was an assignment in writing or not.

"34. And the plaintiff, J. H. Gerlach Company, Inc., acquired thereby no right or possession of the alleys even in the case of a default of payment of the terms of said contract of conditional sale by Steele and Peterson, and the defendant is entitled to a verdict in his favor."

"35. The plaintiff is not entitled to recover more than the value of the alleys as they would have been if his demand had been complied with and he had taken them out, that is to say, only the fair market value of the alleys to be taken out or removed."

"36. The plaintiff is not entitled to recover the cost of replacing said alleys at the time of the alleged demand and refusal."

The judge submitted specific questions to the jury, which were answered as follows:

"1. Was a contract of conditional sale of the bowling alleys made between the Magann Company and Steele and Peterson prior to May, 1916?"   Answer:  "Yes."

"2. If the jury answer 'yes' to the last question, on what date was it executed?"   Answer:  "December 6, 1915."

"3. If the jury answer 'yes' to the first question, was this contract·of conditional sale assigned by the Magann Company to the plaintiff Gerlach Company?" Answer: "Yes."

"4. If the jury answer 'yes' to the last question, was this contract of conditional sale assigned by the plaintiff Gerlach Company to the Medford Trust Company?" Answer: "No."

"5. Was Magann acting as agent for the Gerlach Company when the demand for the alleys was made on the defendant Noyes?" Answer: "Yes."

"6. Did the defendant Noyes have knowledge that the Magann Company was installing the alleys under a conditional bill of sale, before they were installed?" Answer: "Yes."

"7. Did the Magann Company have knowledge of the provisions of the lease between Noyes and Steele and Peterson prior to the installation of the alleys?" Answer: "No."

The jury found for the plaintiff in the sum of $1,668.50. The defendant alleged exceptions.

*W. P. Murray,* for the defendant.

*W. Flaherty,* (*M. C. Kelleher* with him,) for the plaintiff.

PIERCE, J. This is an action for the alleged conversion of certain bowling alleys. Upon substantially the same evidence, the case was before this court in December, 1921, and is reported in 241 Mass. 69. At the conclusion of the evidence in the second trial, the defendant moved that a verdict be directed in his favor; and he excepted to the denial of the motion and to the refusal to give certain requests for rulings of law. The jury found for the plaintiff.

The facts warranted by the reported evidence are that in the summer of 1915 the defendant was engaged in constructing a building, suitable for use as a place for a moving picture theatre, with a basement adapted for a bowling alley business. July 16, 1915, he leased to Peterson and Steele a certain part of the building then in process of construction, for a term of five years beginning October 1, 1915. The lease contained the provision: "It is agreed between the parties hereto that any and all alleys which may be constructed by or for the party of the second part [Peterson and Steele] in

and upon said premises shall be deemed to be and be affixed to the realty and shall not be removed therefrom except upon the written order of the lessor."

In September, 1915, without knowledge that the lease had been signed or of the terms of the lease, a representative of J. P. Magann and Company, sent by Magann, had a talk with the defendant, Noyes, with reference to Steele and Peterson and "the security on the goods" which J. P. Magann and Company later sold to Steele and Peterson. At this conversation the defendant asked the representative "about the security on the goods," and the agent replied: "we always sold on a lease or a conditional sale," that is, "that in making the property belong to Magann and Company until it was paid for in full." There is no evidence of what the defendant said in reply, if he said anything, but there was evidence that he said nothing about having executed a lease of the premises, and specifically nothing about a provision in a lease to Steele and Peterson which made the bowling alleys a part of his real estate.

December 6, 1915, an agreement of conditional sale of the bowling alleys in question, which were installed in the premises of the defendant in January or February, 1916, was executed between J. P. Magann and Company and Steele and Peterson, the material parts pertinent to this action reading as follows: "It is furthermore agreed that the personal property supplied by J. Magann & Co., under this contract shall be placed in the premises described in said specifications and are not to be removed therefrom without the consent in writing of J. Magann & Co., until all notes issued hereunder are fully paid, and it is agreed that said personal property shall not be so attached or fixed to said building as to become part of the realty and under no circumstances shall they be deemed so attached. . . . It is understood and agreed that the title to said personal property shall remain in J. Magann & Co., until said cash and notes are paid over and said mortgage recorded. And in case no mortgage has been agreed upon then the title and ownership shall remain vested in said J. Magann & Co., until all notes outstanding on said contract are paid in full with interest, and in case of failure

to pay any of said notes when due or cash instalments in case such have been agreed upon then all remaining notes or cash instalments outstanding shall become due and payable, and J. Magann & Co., shall be entitled to take immediate possession of said property and may remove it from said premises without legal process or other formality, and all payments which may have been made shall be considered as rental for the use of said property while in the possession of said Steele and Peterson or his heirs or assigns, and said Steele and Peterson and his heirs or assigns hereby waive all rights if any they may have under lien laws or other exemptions and of any rights whatever which they may have under such laws."

The notes referred to in the agreement of conditional sale were executed on February 5, 1916, when the bowling alleys were in place, in a completed condition, on the premises of the defendant. February 23, 1916, Magann, for the firm, indorsed on the back of the agreement of conditional sale, "We hereby assign the within notes to the J. H. Gerlach Co." These notes with the agreement were then given to J. H. Gerlach Company as "security for material furnished on this particular job." J. H. Gerlach Company indorsed the notes, and delivered the Steele and Peterson agreement, without assignment, to the Medford Trust Company, as collateral to notes given by it to that trust company. The collateral notes were not paid by Steele and Peterson as they became due, and were paid by J. P. Magann and Company as indorser of them; and when paid to the Medford Trust Company were returned to J. P. Magann and Company not stamped "paid." The Medford Trust Company did not return the collateral agreement to J. P. Magann and Company with the notes, when paid by that company, and the agreement could not be found at the time of the trial of this action. The agreement dated December 6, 1915, not being recorded, on the advice of their attorney, Steele and Peterson and J. P. Magann and Company, in May, 1916, signed, executed and had recorded a confirmatory agreement of conditional sale. Steele and Peterson defaulted in payment of the notes given with the conditional sale agreement in the

spring of 1916. J. P. Magann and Company in the fall of 1916, speaking through Mr. Magann, told the defendant in substance that it had a conditional sale of the bowling alleys and that it wanted its money. The defendant, Noyes, in substance replied that he knew J. P. Magann and Company had a lease of the alleys; that he would not pay any money as the "alleys belonged to him" and "that he would not give . . . [Magann] the alleys nor the money."

We shall consider the issues argued by the defendant in his brief in the order of their presentment therein.

The contention numbered "1" is "That the elements necessary to create an estoppel were not sufficiently established by the evidence as a matter of law, in that it did not appear that there was reliance upon the silence of the defendant prior to the installation of the alleys, and that the evidence indicated a want of due care on the part of the installer of the alleys in not discovering the provisions of the lease." This contention does not question that the jury were warranted on the evidence in finding that the defendant had knowledge that "the Magann Company was installing the alleys under a conditional bill of sale, before they were installed"; nor does it involve a denial of the right of the jury to find on the evidence that the silence of the defendant, when told that J. P. Magann and Company was selling the alleys on the conditional sale plan, was sufficient to lead that company to believe it could hold the alleys as its own until they were paid for. It is of course elementary that mere passivity, mere standing by in silence in the hearing of a declaration of fact, will not work an estoppel to deny such fact, unless the hearer has a duty to speak and has reasonable ground to anticipate that the declarant, lulled into security by a faith in the existence of the declared fact which the hearer knows concerns his interest and knows it is not true, will make some change in position. The question then is, Did J. P. Magann and Company change its position? Did it sell the bowling alleys to Steele and Peterson in the belief that the defendant would interpose no legal obstacle to its right to remove the alleys should the terms of the conditional sale agreement be broken, and unperformed? In this regard

it must be assumed that the jury weighed all the pertinent evidence and applied thereto the law given them by the judge "that in order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm, and that the other knew or had reasonable cause to know that such consequences might follow." The finding for the plaintiff on the whole case involved and required the subsidiary findings that in the circumstances the defendant had a duty to speak, was silent, and that J. P. Magann and Company acted on that silence to its harm. The direct evidence, with such inferences as the jury could rationally draw therefrom, clearly warranted a finding that J. P. Magann and Company relied upon the report made to Magann by its agent, that the defendant had remained silent when informed of J. P. Magann and Company's intention to erect alleys on the defendant's premises under a contract of conditional sale.

As regards the contention numbered "2," we find nothing in the evidence to justify the argument of the defendant that J. P. Magann and Company was careless in not ascertaining that there was a written lease of the premises to Steele and Peterson, and negligent in not ascertaining the provisions of such lease. The silence of the defendant, in the circumstances, was in effect a misrepresentation of fact, which may have caused J. P. Magann and Company to desist from inquiring and neglect its means of information. *David* v. *Park*, 103 Mass. 501.

There is nothing in the third contention, "That even though the title to the bowling alleys was reserved to Magann and Company by the contracts of conditional sale, and even though the defendant Noyes is estopped to assert the provisions of his lease that they became real estate upon annexation, nevertheless, disregarding this provision, Magann retained under his contract of conditional sale only such rights as the tenants could grant to him, namely, the right that the bowling alleys should constitute tenant's fixtures, removable during the term; that therefore the rights of the Magann Company were subject to a termination of the tenant's hold-

ings prior to their removal," and were lost because no demand was made during the existence of the term. The right to retain title to personal property sold on a conditional bill of sale, which is or may become annexed to real estate, depends on the conditions which exist between the parties when the contract is made, and not upon changes which come into existence before performance.

"The remaining exceptions relate to the title of the plaintiff, it appearing that the contract of conditional sale was security for certain notes given by the tenants to the Magann Company and by them transferred to the Gerlach Company as collateral security for a debt, and that the Gerlach Company in turn transferred such notes either with or without the contract of conditional sale which secured them, there being evidence both ways on this point, to the Medford Trust Company also as collateral for its obligation to that bank, the defendant insisting that, by reason of these transactions, no cause of action could arise in favor of the Gerlach Company or be enforced by it even if such contract of conditional sale had not passed to the Medford Trust Company, such transaction, as the defendant contends, being a mortgage which was not recorded, and therefore invalid except as to the parties thereto, and also that whatever rights existed by reason of the contract of conditional sale had passed to the Medford Trust Company." As between Steele and Peterson and J. P. Magann and Company the conditional bill of sale was not a mortgage, but was an agreement to sell upon condition that the purchaser should pay their notes at maturity. *Harkness* v. *Russell,* 118 U. S. 663. As between J. P. Magann and Company and J. H. Gerlach Company, the transfer of the notes of Steele and Peterson and of the agreement of conditional sale as security for the payment of a debt of J. P. Magann and Company operated as a mortgage between the parties, but was void as to all persons thereafter deriving title to the mortgaged chattels under or through J. P. Magann and Company. G. L. c. 255, § 1. *Worcester Morris Plan Co.* v. *Mader,* 236 Mass. 435. *Pratt* v. *Harlow,* 16 Gray, 379. *Brackett* v. *Bullard,* 12 Met. 308. *Arnold* v. *Chandler Motors of New England,* 244 Mass. 210.

The transfer of the collateral notes to the Medford Trust Company by J. H. Gerlach Company, as security for its debt to the trust company, did not create a legal mortgage of the unassigned agreement of conditional sale or of the property which the bill of sale covered, the legal title thereto remaining in J. H. Gerlach Company. *Marsh* v. *Woodbury,* 1 Met. 436. *Freedman* v. *Bloomberg,* 225 Mass. 491.

The defendant in this action has derived no title or interest in the chattels mortgaged to J. H. Gerlach Company by, through or under J. P. Magann and Company; and he could acquire no adverse title to J. P. Magann and Company under the provisions of his lease to Steele and Peterson. The title to the notes of Steele and Peterson revested in J. P. Magann and Company before demand was made for the alleys or their value. The legal title to the alleys with the right of possession is in J. H. Gerlach Company, Inc.; which holds the same as trustee for J. P. Magann and Company. After the demand of Magann for the return of the bowling alleys or their value, no reason is perceived why, on the facts of this case, this action should not be maintained in the name of the holder of the legal title. *Pratt* v. *Harlow, supra.* *Luce* v. *Hadley,* 119 Mass. 229. *Bryan* v. *Traders' Ins. Co.* 145 Mass. 389, 391.

*Exceptions overruled.*