In re LEVEEN.

No. 474–52.

United States District Court
D. Massachusetts.

June 9, 1954.

Edward I. Perkins, Kanff & Goldberg, Boston, Mass., for petitioners.

Alpert & Alpert, Boston, Mass., for alleged bankrupt.

Henry Friedman, Boston, Mass., for Ruth Bethel, legal guardian for Lena Leveen.

FORD, District Judge.

The respondent in this involuntary bankruptcy proceeding has filed exceptions to the report of the referee, sitting as special master to whom the case had been referred to consider issues raised in paragraph four of the bankruptcy petition. The precise issue before the master was whether the alleged bankrupt committed the first act of bankruptcy by transferring, in fraud of creditors, certain land with buildings thereon situated in Nantucket.

The master found that the real estate in question consists of two adjoining tracts of land of which Lena Leveen, the alleged bankrupt, was, on July 22, 1952, the recorded owner. One tract was acquired from her sister, Esther Leveen, by deed dated July 1, 1940, and the other from the Nantucket Institution for Savings by deed dated July 17, 1942. By deed dated July 22, 1952 Lena Leveen conveyed both tracts to Esther Leveen. This conveyance constitutes the alleged act of bankruptcy. It was made without consideration and at a time when Lena was hopelessly insolvent.

Testimony was given before the master, chiefly by Esther and a third sister Caroline, that Esther became owner of the first tract in 1917 by gift from her father, and that the conveyance to Lena in 1940 was without consideration. As to the second tract, the purchase price to the bank was paid by Caroline, who was later reimbursed by Esther, and Lena had no knowledge of this second transaction.

Further testimony was to the effect that Esther, in 1940, was engaged in a business venture which she feared might prove unprofitable and sought to

protect her Nantucket property by placing it in Lena's name, and that it was her intent to retain the full beneficial interest in the property, giving to Lena only the bare legal title. Esther also stated that in the summer of 1952 she became aware that Lena was acting queerly and was heavily in debt and that Esther then asked for and received a reconveyance of the property.

There was also evidence that on January 24, 1952, Lena gave a mortgage on the property in question to one Theodore Karp to secure a payment of $5,000, and that on May 15, 1952 she borrowed $1,300 from a Mr. Goodwin, giving him a written statement which included the sentence, "I am also owner of a house on Nantucket Island." Neither Karp nor Goodwin is a petitioning creditor here. There is no indication that any evidence was offered as to any other creditor of Lena who had advanced money or extended credit in reliance on her apparent ownership of this property.

The master made no finding on the issue of whether Lena or Esther was the real owner of the property. Instead he held that even if Esther were the true owner, she was estopped to assert such ownership, and, therefore, concluded that Lena had committed an act of bankruptcy by her transfer of the property to Esther.

 The master thus assumes that so long as an estoppel against Esther can be found, the real ownership of the property is immaterial in deciding whether Lena committed the first act of bankruptcy. The law appears to be otherwise. A transfer of property by a debtor is not in fraud of his creditors unless it is his own property which is transferred. It is not enough that he should convey to its rightful owner property in which he had no more than a bare legal interest. This is true where the debtor holds the legal title under a purely oral trust for the benefit of a true owner, and voluntarily conveys it to the true owner in fulfilment of the trust, even where the trust, being purely oral,

could not have been enforced against him. 4 Collier on Bankruptcy, § 67.30, at p. 266; Frederick v. Baxter Arms Corp., 2 Cir., 107 F.2d 732; Ferguson v. Winchester Trust Co., 267 Mass. 397, 166 N.E. 709, 64 A.L.R. 573; Hutchins v. Mead, 220 Mass. 348, 349, 108 N.E. 67; Briggs v. Sanford, 219 Mass. 572, 107 N.E. 436.

 It is doubtful whether the master was correct in holding that merely because she allowed title to her property to remain in Lena's name, Esther is thereby estopped from asserting her true ownership, without any showing that Esther knew that Lena was obtaining money or credit on the strength of her apparent ownership. Liberty Trust Co. v. Hayes, 244 Mass. 251, 255, 138 N.E. 582. But even if all the requisites for a valid estoppel were present here, the issues of this case could not be settled on that basis. Estoppel is a personal doctrine. Only one who has relied upon and been misled by the words or conduct of another and has acted on the basis of such reliance (or those in privity with him) can take advantage of an estoppel. O'Gasapian v. Danielson, 284 Mass. 27, 33, 187 N.E. 107, 89 A.L.R. 1159; McLearn v. Hill, 276 Mass. 519, 524, 177 N.E. 617, 77 A.L.R. 1039; J. H. Gerlach Co., Inc., v. Noyes, 251 Mass. 558, 565, 566, 147 N.E. 24, 45 A.L.R. 961. Even if it should be shown that all the elements of an estoppel against Esther exist in favor of Karp, Goodwin, or any other individual creditor of Lena, this does not create an estoppel against her in favor of all the creditors. The essential question here is whether Lena's conveyance to Esther was a fraudulent transfer of her own property, or a return to Esther of Esther's property. If Esther was, as she claims, at all times the true beneficial owner of the property, the conveyance to her was not an act of bankruptcy on the part of Lena. There is no authority for the view that this rule is in any way changed by the fact that in a proceeding by some of the creditors of Lena to satisfy their claims from the

property, Esther may be estopped to assert her true ownership. Cf. In re Murray, D.C., 13 F. 550, 552. The determination of the real ownership of the property is thus essential to the proper determination of the issues before the special master. The case is, therefore, to be remanded to the referee as special master for determination of the question of whether the alleged bankrupt Lena Leveen was the real owner of the Nantucket real estate involved, and the determination, in the light of the real ownership, of the other issues raised by paragraph four of the petition.