**PLYMOUTH-HOME NATIONAL BANK**
vs.
**NEPONSET LINCOLN-MERCURY**

District Court Department
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

November 19, 1980

Constance V. Vecchione for the plaintiff.
Robert F. Murphy for the defendant.

Present: Lee, P.J., Rider, J. and Staff, J.

STAFF, J. The plaintiff bank claims damages from the defendant automobile dealer for defendant's failure to name the plaintiff as first lienholder on an application for a certificate of title on a motor vehicle sold by the defendant to a third party, Joseph M. Grant, although a check issued by the plaintiff in payment of the balance of the purchase price contained a warranty by the defendant that the plaintiff was so named.

Defendant's answer admitted that the application failed to name the plaintiff as first lienholder, denied any loss by plaintiff, denied the making of any contract, alleged contributory negligence by plaintiff, alleged estoppel, and alleged lack of proximate cause.

The Court found for the defendant on the following evidence:

The defendant, an automobile dealer, sold an automobile to one Joseph M. Grant. The plaintiff was given a security interest in the vehicle, and it issued its check made payable to the defendant and the purchaser, Grant.

The reverse side of the check bore the following stamp:

"The Endorser hereby warrants that the application for title filed in connection with

| 1976 | Lincoln | Town Car | 6Y82A858625 |
|------|---------|----------|-------------|
| Year | Make | Model | Ident. Number |

lists the Plymouth-Home National Bank, Brockton, Mass. as first lienholder with a chattel mortgage dated 5-27-76."

and the check was endorsed by both payees.

The check of the plaintiff was in fully payment of the balance due the defendant from Grant for the car.

The application for the certificate of title, prepared and executed by the defendant as required under G.L. c. 90D, sec. 7, did not name the bank as first lienholder and the title issued by the Registry of Motor Vehicles recorded no lienholders.

The transaction took place in May of 1976 and by late 1976, the plaintiff, not having received its copy of the title, called the defendant, asking that the application be checked to determine whether the bank was named on it as lienholder. The reported evidence contains no information as to what if anything the defendant did as a result of this call. However, the plaintiff made repeated requests of Grant asking that he execute the proper document to add the plaintiff as a lienholder on the title. Grant, however, refused to sign the forms which would have added the plaintiff as named lienholder, the plaintiff never obtained a perfected security interest, and in 1977 Grant sold the car, still owing the plaintiff $4,408.18. At this time the book value of the car was substantially in excess of this amount. The plaintiff unsuccessfully sued Grant and then eventually brought this action.

The plaintiff, after the trial, seasonably filed 16 requests for rulings as follows:

"1. The plaintiff Plymouth-Home National Bank is a national banking association having its principal place of business in Brockton, Massachusetts.

2. The defendant Neponset-Lincoln Mercury, Inc. is a Massachusetts corporation having its principal place of business in Dorchester, Massachusetts.

3. On or about May 27, 1976, the plaintiff issued its check No. 252981 payable to 'Joseph M. Grant and Neponset-Lincoln Mercury.'

4. Prior to issuing the check, the plaintiff's agent, Herbert Johnson, called the defendant and indicated that the plaintiff was to be named on the title as lienholder.

5. Said check was in full payment for the balance due on the purchase by Joseph M. Grant from the defendant of a 1976 Lincoln Town car, Vehicle Identification No. 6Y82A85625.

6. The plaintiff had a security interest in said vehicle.

7. The back of the check referred to in paragraph (3) above, bears the legend that the endorsers warrant that the application for title names Plymouth-Home National Bank as the first lienholder, and the check was endorsed by both payees.

8. The application for title, prepared and signed by the defendant as required by G.L. c. 90d, s 7, did not name Plymouth-Home National Bank as lienholder, and the title issued by the Registry of Motor Vehicles, therefore, showed no lienholders.

9. When no title was received by the Bank, the plaintiff's agent, Herbert Johnson, called the defendant in late 1976 and requested that the defendant's copy of the application for title be checked, and was told that the plaintiff was not named as lienholder.

10. Despite repeated requests from the plaintiff, Mr. Grant refused to execute Form RMV-5 for adding a lienholder, and the plaintiff never obtained a perfected security interest.

11. The vehicle was transferred by Mr. Grant without the plaintiff's knowledge, the loan has gone into default with a balance due of $4,408.18, and suit has been (sic) brought against Mr. Grant, but he apparently has no assets.

12. Both at the time of the purchase of the vehicle and at the time the loan went into default in 1977, the book value of the vehicle was well in excess of the amount due the plaintiff.

13. The inclusion of the warranty provision on the back of the check is a valid practice by the plaintiff, and is not in violation of any state law. **Don Lorenz, Inc. v. Northampton National Bank,** 78 ASA 995, 381 N.E. 2d 1108 (1978).

14. The defendant breached its contract to the plaintiff in failing to name the Bank as lienholder on the application for certificate of title. **United Virginia Bank of Fairfax v. Dick Herriman Ford, Inc.,** 210 S.E. 2d 158 (Supreme Court of Virginia, 1974).

15. The defendant was negligent in failing to name the plaintiff as lienholder on the application for certificate of title, despite the warranty on the back of the check and the confirmatory phone call from the plaintiff's agent.

16. As a result of the defendant's negligence and breach of contract, the plaintiff sustained a loss of $4,408.18 plus interest and costs of suit."

The Court took no action on these requests indicating the requests appeared to be requests for findings of fact, and made compliance to its special findings.

The Court made special findings as follows:

"1. Plymouth-Home National Bank ('the Bank') is a national banking association having its principal place of business in Brockton.

2. Neponset-Lincoln Mercury, Inc. ('the Dealership') is a Massachusetts corporation having its principal place of business in Dorchester.

3. On May 27, 1976, the plaintiff issued its check no. 252981 payable to 'Joseph M. Grant and Neponset-Lincoln Mercury, Inc.' (A copy of the front and back of the check was an exhibit in the case.)

4. The reverse side of the check bore the following stamp:

'The Endorser hereby warrants that the application for title filed in connection with the

1976 Lincoln Town Car 6Y82A858625
Year Make Model Ident. Number

lists the Plymouth-Home National Bank, Brockton, Mass. as first lienholder with a chattel mortgage dated 5-27-76.'

684

5. The Bank had a security interest in said vehicle (a copy of the security agreement and note signed by Joseph M. Grant and Rita Grant were exhibits in the case.)

6. The application for title was prepared by and executed by the Dealership as required by G.L. c. 90D, sec. 7, but said application failed to name the Bank as lienholder.

7. The title issued by the Registry of Motor Vehicles recorded no lienholders.

8. In late 1976, the Bank, having not received its copy of the title, called the Dealership requesting that the title application prepared by the Dealership be checked to determine whether the Bank was named therein as lienholder.

9. The Bank made repeated requests of Joseph M. Grant requesting him to execute the proper document to add the Bank as lienholder on the title. This Mr. Grant either refused or neglected so to do.

10. Between May of 1976 and June of 1977, Mr. Grant was in default several times in his payments on the note.

In June of 1977 he was no longer in arrears.

11. In September of 1977, while in default on the note with a balance due of $4,408.18, Mr. Grant sold the motor vehicle in questionn. At the time of the default and the subsequent sale of the motor vehicle, the book value of the motor vehicle was substantially in excess of the $4,408.18 due the Bank.

12. Suit was brought by the Bank against Grant, but he appears to have no assets.

13. Outside of a telephone call in late 1976 to an unnamed employee of the Dealership, the Bank made no further effort to cause the Dealership to remedy the failure to include the Bank as a lienholder in the application for title.

14. In September, 1978, the Dealership received a letter from the Bank's attorney notifying that it of its (sic) responsibility and liability.

15. G.L. c. 90D, sec. 27 provides as follows:

'The registrar shall suspend or revoke a certificate of title upon notice and reasonable opportunity to be heard in accordance with section thirty, when authorized by any other provision of law, or if he finds that the certificate of title was fraudulently procured or erroneously issued, or that the vehicle had been scrapped, dismantled or destroyed. Suspension or revocation of a certificate of title shall not in itself, affect the validity of a security interest noted on it . . .' (Emphasis supplied)

16. I find that the Bank failed to avail itself of the remedy provided by G.L. c. 90D, sec. 27, after it had become aware of the error of the Dealership in failing to name the Bank in the application for certificate of title.

17. I find that the certificate of title was erroneously issued.

18. I find that while Joseph M. Grant was in default on payments of the note and consistently refused to name the Bank as lienholder on the certificate of title, the Bank failed to exercise its rights as a secured party upon such defaults.

19. While the warranty provision on the back of the check is a proper and valid business practice and does not violate the state law, see **Don Lorenz v. Northampton National Bank**, Mass. App. Ct. 1978 995, 381 N.E. 2d 1108 (1978), and while I find that the Dealership breached its contract to the Bank in failing to name it as lienholder on the application for certificate of title, see **United Bank of Fairfax v. Dick Herriman Ford, Inc.**, 210 S.E. 2d 158 (Sup. Ct. of Virginia, 1974) I, nevertheless, conclude that the failure of the Bank to notify the Dealership of the error in the application for certificate of title until more than two years had passed after the Bank had notice of such error as well as the Bank's failure to avail itself of the remedy provided by G.L. c. 90D sec. 27, misled and caused harm to the Dealership to such a degree as to form the basis for an estoppel.

I invoke the doctrine of estoppel because I find that the failure of the Bank to take prompt action to remedy the defect in the certificate of title, once such defect became known to the Bank, was a matter which could have been easily remedied, either by proper notice to the Dealership or by notice to the Registry of Motor Vehicles pursuant to G.L. c. 90D sec. 27. I find that such

failure to act caused the Dealership to be misled to its damage, notwithstanding the warranty of the Dealership set forth on the back of the check. See **Marsh v. S.M.S. Co.**, 289 Mass. 302, 307 (1935); **J.H. Gerlach Co., Inc. v. Noyes**, 251 Mass. 558, 565 (1925); **Moss v. Old Colony Trust Co.**, 246 Mass. 139, 150 (1923).

/s/ GEORGE N. HURD, JR.
George N. Hurd, Jr., Justice
Entered: May 25, 1979"

The report states that it contains all the evidence material to the question reported.

The plaintiff claimed to be aggrieved by the Court's failure to rule on his requests numbers 15 and 16, the failure to rule in effect denying the requests, and by the Court's special findings 16 through 19.

The Court, of course, is not required to rule on requests for findings of fact and findings of fact ordinarily are not reviewable. **Perry v. Hanover**, 314 Mass. 167, 169 (1943), **Memishian v. Phipps**, 311 Mass. 521, 523, 524 (1942).

In this case, the plaintiff has combined requests for findings of fact together with requests for rulings of law. Though this may be bad form, we feel that the requests for rulings of law must be winnowed out and acted on by the trial judge. The failure to act on a proper request for ruling, in effect, denies the request. **Satlawa v. New England Telephone & Telegraph Co.**, 54 Mass. App. Dec. 97, 108 (1974).

Request number 15 asks the judge to rule that the defendant was negligent in failing to name the plaintiff as lienholder. We find it unnecessary to rule on this issue since our action on request number 16 results in a new trial being ordered. We point out that the defendant's obligation in this case appears to be based upon an express warranty and that negligence or lack of negligence is immaterial to this claim.

Request number 16 properly raises the issue of defendant's breach of contract by failing to name plaintiff as lienholder and the Court indicated by its special findings that there was such a breach.

The Court, however, invoked the doctrine of estoppel to excuse the defendant's liability for its breach of contract, concluding that the failure of the plaintiff to formally notify the defendant of its breach for a period of two years after the plaintiff had notice and the failure of the bank to avail itself of the remedies provided by G.L. c. 90D, sec. 27 precluded the plaintiff from recovering.

We find prejudicial error in the trial court's application of the doctrine of estoppel.

The kind of estoppel dealt with by the Court is commonly called equitable estoppel. For the distinction between it and promissory estoppel see Williston on Contracts, section 140. pp 611-615 (3rd Ed. 1957).

Estoppel acts as an absolute bar precluding the estopped party from taking a legal position which he would be otherwise entitled.

Estoppels are not favored by the law, and the doctrine of estoppel is applied only where necessary to avoid an inequitable result. **Sheppard Envelope Co. v. Arcade Malleable Iron Co.**, 335 Mass. 180, 186 (1956). See also **Boston & Albany RR v. Reardon**, 226 Mass. 286, 291 (1917). "In order to work an estoppel, it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm, and that the other knew or had reasonable cause to know that such consequences might follow." **McLearn v. Hill**, 276 Mass. 519, 524 (1931). See also **J.H. Gerlach Co. v. Noyes**, 251 Mass. 558 (1925).

The plaintiff here did nothing affirmatively to mislead the defendant.

The law does recognize a kind of estoppel "by silence" but this doctrine is applied only where there is a duty to speak.

"It is of course elementary that mere passivity, mere standing by in silence . . . will not work an estoppel . . . unless the hearer has a duty to speak . . ." In other words, to give rise to an estoppel by silence or inaction, there must be a right and an opportunity to speak and in addition an obligation or duty to do so. **J.H. Gerlach v. Noyes** supra at 565.

Furthermore, there is no obligation to disclose matters of which the other party has actual or constructive knowledge. See 28 Am Jur 2d Estoppel and Waiver, sec.

53.

In this case, the defendant had actual knowledge that the plaintiff was not named on the certificate of title because the defendant prepared the application for title.

That the bank failed to utilize the remedies afforded by G.L. c. 90D sec. 27 adds little to defendant's argument. Since the defendant made application for the certificate of title, it could have verified whether the certificate was properly issued. Good business practice would seem to dictate such verification when a warranty was given such as here. Had the dealer done so and discovered its error, it could have invoked the provisions of G.L. c. 90D sec. 27 as could the plaintiff.

It seems to us that in cases where the doctrine of estoppel is applied, it should be against wrongdoers, not against the victim of a wrong. Here, the defendant breached its agreement; it is not an innocent party; estoppel should not shield it from the consequences of its breach.

Judgment for defendant is vacated. The case is remanded for a new trial.

So ordered.
Edward A. Lee, P.J.
Daniel H. Rider, J.
Richard O. Staff, J.