Larkin, J.
This is an action in contract in which the appellee (plaintiff below) seeks to recover $6,067.17 on the basis of an alleged breach of contract by the appellant (defendant below) in failing to properly “file” an “Application for Certificate of Title” with the Massachusetts Registry of Motor Vehicles in connection with the sale of a certain motor vehicle to one Daniel T. Corbett, which application was to have listed the appellee as a lien holder. The appellant responded to the complaint by claiming inter alia, that it had fully complied with any and all obligations imposed upon it through custom and usage in the trade by naming the appellee as a first lien holder on the application for the subject Certificate of Title. Accordingly, it argues that it did not breach any agreement with the appellee. Further, the appellant asserts that the word “filed," as employed in the context of the agreement, is patently ambiguous, thereby requiring consideration of extrinsic evidence as to the question of what constituted the relevant and appropriate “custom and usage” in the trade. In addition, the appellant raised the affirmative defenses of *112 laches and equitable estoppel. At trial, the appellant also raised, by way of counterclaim, an issue under M.G.L. c. 93A, contending that the conduct of the appellee constituted unfair acts or deceptive trade practices under the statute.
At trial, the district court rejected these contentions holding that a breach did in fact occur; that the word “filed” was not patently ambiguous; that the doctrine of estoppel should not be invoked against the appellee nor was the appellee guilty of laches or any unfair or deceptive acts. Accordingly, the trail judge found for the appellee in the amount of $6,067.17 plus interest in the amount of $821.78. It is the action of the trial judge in finding for the plaintiff on all counts which is the subject of this appeal.
The facts which ground this appeal are as follows:
On November 24, 1979, the appellant Jerry Rome Motor Car Co., Inc. (hereinafter “Jerry Rome”) entered into an agreement with one Daniel T. Corbett (co-defendant below but not a party to this appeal) for the purchase of a new 1979 Datsun “ZX” automobile. On November 27,1979, the appellant Kelko Credit Union (hereinafter “Kelko”) executed a loan to Corbett in the amount of $9,468.00 for the purchase of the automobile from Jerry Rome. The appellee issued a check made payable jointly to Corbett and Jerry Rome, the proceeds of which were used to purchase the automobile. A promissory note was executed by Corbett in favor of Kelko which was secured by creating a security interest in the automobile at the time the check was prepared by the appellee.
On the reverse side of this check was printed the following:
The endorsers hereby warrant that the Application for the Certificate of Title filed in connection with the 1979 Datsun 280 ZX coupe, Ser. #HS130156067, color-maroon, names the Kelko Credit Union, Springfield, Massachusetts, as first lien holder and states the type and date of its security agreement. The endorsers also warrant that the correct filing fees are included with the Application for Certificate of Title and that the name of the owner on the Application for the Certificate of Title is Daniel T. Corbett.
The check was delivered by Corbett to Jerry Rome by whom it was endorsed and negotiated in its original form. The record establishes that there was never any discussion between the appellee and the appellant relative to the terms of the written agreement, practices employed by Jerry Rome relative to processing such documents, and/or the expectations of the appellee.
Jerry Rome has been in the business of selling motor vehicles in the metropolitan Springfield area for the past 24 years including the period during which the Motor Vehicle Title Act (M.G.L. C.90D) has been effective. According to the testimony of Jerry Rome’s President, it has always been Rome’s practice to deliver to the purchaser of a motor vehicle the appropriate “substantially completed” application for registration and title, for the purpose of the purchaser obtaining an insurance endorsement thereon and subsequent delivery to the Registry of Motor Vehicles. This document prepared by Rome is known as “Form RMV-1” which, again, is an application for “Ceftificate of Title and Application for Registration of a New Motor Vehicle.” This procedure was apparently consistent with the practice followed by motor vehicle dealerships in the Springfield area.
Following this procedure, Jerry Rome prepared the Application for Certificate of Title and named the appellee as first lienholder on the subject motor vehicle. Jerry Rome then tendered the Application for Certificate of Title along *113 with the manufacturer’s “Certificate of Origin” to Corbett in order that he could present the application to his insurance company and subsequently (if all went as envisioned by Jerry Rome) both documents to the Registry of Motor Vehicles so that an appropriate Certificate of Title might be obtained.
However, as frequently happens in life, all did not go as envisioned. Corbett never filed the Application prepared by Jerry Rome. Instead, on December 4, 1 °>80, Corbett filed with the Registry an Application for Title which did not list ti e appellee as lienholder for the automobile. The Application actually filed was not the one prepared by Jerry Rome. The purported signature of Jerry Rome on the document was a forgery. No application listing the appellee as a lienholder was ever filed with the Registry and no Certificate of Title listing appellee as lienholder was ever issued.
Upon receiving an insurance canellation notice on March 7, 1980, the appellee examined Corbett’s loan folder and discovered that it had not yet received the Certificate of Title for the Datsun 280ZX. Shortly thereafter, inquiries were directed to Corbett, the Registry of Motor Vehicles and Corbett’s insurance agent regarding the status of the Title. The appellee learned that the Registry had not issued any title or registration for the vehicle. Sometime in June 1980, the appellee contacted Jerry Rome. The appellee’s manager spoke to an unidentified employee at Jerry Rome and explained to this person that the appellee had not yet received the Certificate of Title for the subject Datsun 280ZX. The appellee was told by the appellant’s agent that he would check into the matter and call her back. Soon thereafter, this person telephoned the appellee and stated that the Application for Title prepared by Jerry Rome listed Kelko as lienholder. Kelko requested nothing further of Jerry Rome at that time.
Kelko never received a Certificate of Title for the vehicle.' Although the appellee made numerous inquiries of Corbett, three inquiries of the Registry and several to Corbett’s insurance agent after initially contacting Jerry Rome in June 1980 regarding the Title, it never contacted Jerry Rome again.
Kelko learned on at least four separate occasions that Corbett’s compulsory insurance on the subject motor vehicle would be cancelled for non-payment of premiums. The appellee had notice of pending insurance cancellations and subsequent reinstatements, since it was listed as lienholder with the insurance company and each insurance company notice for cancellation and reinstatement received by the appellee indicated that status. Further, Kelko never informed Jerry Rome as to its continuing difficulty in obtaining the Certificate of Title from Corbett nor did it at any point prior to January 27, 1982 place Jerry Rome on notice that it intended to hold Rome responsible for its claim of loss. Kelko did not advise Rome of its inability to locate the motor vehicle until January 27, 1982.
At some time during this period, Corbett disposed of the Datsun to an unknown third party. The time of this transfer is unknown.
Only after November 1981 did Kelko first learn of the fact that an Application for Title other than the one prepared by Jerry Rome had been filed and that the Application actually filed failed to list Kelko as lienholder. These facts were learned by the Appellee through its attorney after it turned the matter over for collection. Again, it was also only after November 1981 that the appellee learned that Corbett had previously disposed of the automobile.
Subsequently, on January 27, 1982, the appellee demanded payment from Jerry Rome of the balance due on the Corbett note. Corbett had paid Kelko $4,861.10 on this indebtedness between November 29,1979 and June 8,1981. *114 The balance due on this note is $6,067.17. At all times relevant hereto, the automobile’s value exceeded this amount due.
With this factual background, we turn to the questions raised on the present appeal. The first issue raised on appeal is whether the appellant, Jerry Rome, breached a contract with the appellee, Kelko. The appellant argues that it fully discharged all of its obligations under the agreement as embodied on the back of the check. Specifically, the appellant argues that the meaning of the word "filed” in the agreement should be construed in accord with industry practice. M.G.L. c. 106, § 1-206. (Uniform Commercial Code, § 1-205). From the record, it is established that the practice of car dealerships in the Springfield area (and indeed in Massachusetts in general) is to follow the course taken in the instant case, namely: to leave the actual responsibility of filing the Application for Title with the purchaser of the automobile. It is the appellant’s position that Kelko’s failure to object to this practice constitutes “acceptance” of the practice in full satisfaction of the contract or, alternatively, indicates that the parties had no agreement as to the meaning of the particular language. In our view, these contentions are without merit.
It should be noted at the outset that such language as was on the back of the subject check, when endorsed by a party to the check, creates a binding contract between the drawer and the endorser. Northampton National Bank v. Don Lorenz, Inc., 1981 Mass. App. Div. 2. Accordingly, the determinative question is whether Jerry Rome performed pursuant to the terms of the contract.
The contract states that the “endorsers . . . warrant that the Application for the Certificate of Title filed . . . names Kelko Credit Union ... as first lien-holder . . .” This language is surely unambiguous. While concededly it does not, eo nomine, require the appellant to deliver the Application for Certificate of Title physically to the Registry of Motor Vehicles, it clearly places any risk of loss resulting from the failure of the Application to indicate the appellee’s lien squarely on Jerry Rome.
To mitigate this result, the appellant argues that M.G.L. c. 106, § 1-205 allows usage of trade to be read into an agreement, even where contract language is unambiguous. This interpretation, while correct (see Uniform Commercial Code, § 1-205, Official Comment 4) conveniently ignores express language of that very statute. M.G.L. c. 106 § 1-205 (4) reads:
(4) The express terms of an agreement and an applicable course of dealing or usa.ge of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course dealing and usage of trade . ..’ (emphasis added).
The express terms of the contract place any risk of loss attributable to inadequate filing squarely on the appellant, who, pursuant to the contract, warrants that the Application filed is indeed properly completed.
The appellant argues that the terms of the contract when interpreted in light of relevant industry usage of trade warrant only that the Application for Certificate of Title was filed to “the best knowledge of the appellant.” This reading, again, however, is clearly at variance with the express terms of the contract and, accordingly cannot be countervailingly controlling. The contract language does not limit the warranty in any way.
There was no evidence that Kelko was aware, or should have been aware, of the usage of trade with respect to filing of Applications for Certificates of Title in the automobile sales industry. The contract required that the appellant *115 insure delivery of the proper Application to the Registry. How it got there was Jerry Rome’s decision and responsibility. That it allowed its customer to perform this duty was clearly at the appellant’s own peril. The failure of Corbett to file the.proper Application led to Kelko’s loss of a perfected security interest in the automobile. Again, this loss was clearly placed on the appellant by the express terms of the contract. For all of these reasons, it is our opinion that the appellant has clearly breached its duty under the contract.
Next, appellant argues that the appellee should be estopped from asserting any breach of contract due to the two year and four month hiatus between the sale of the automobile and the demand for payment upon Jerry Rome, during which time Kelko failed to resort to any recourse against Jerry Rome. Again, we find this contention to be without merit.
It is well established that estoppel is an affirmative defense which must be pleaded by the defendant. Building Inspector of Lancaster v. Sanderson, 372 Mass. 157 (1977). The burden of proving estoppel is on the party asserting it. U.S. v. Dickinson, 95 F.2d 65, 68 (1st Cir. 1938). The basis of an estoppel is a representation, or conduct amounting to a representation, intended to induce a course of action on the part of the person to whom the representation was made, and where as a consequence of such reliance, there is,a detriment to the person relying on the representation. DeSisto’s Case, 351 Mass. 348, 351-352 (1966). In addition, the cases show that estoppels are not favored by the law, and the doctrine of estoppel is applied only where necessary to avoid a demonstrably inequitable result, See, e.g., Sheppard Envelope Co. v. Arcade Malleable Iron Co., 335 Mass. 180, 186 (1956).
Both parties rely on Plymouth-Home Bank v. Neponset Lincoln-Mercury, 1980 Mass. App. Div. 183. In that case, involving facts virtually similar to the case at bar, a creditor bank issued a check to its customer with language on the back of the check identical to the language at issue here. The customer used the check to purchase an automobile from a dealer, ,w£io, unlike Jerry Rome, failed completely to list the bank as lienholder on any Application for Certificate of Title. In overturning the trial court’s invocation of the doctrine of estoppel against the bank for taking over two years to take action to remedy the defective Application, the Appellate Division stated:
The plaintiff here did nothing affirmatively to mislead the defendant. The law does recognize a kind of estoppel ‘by silence’.but this doctrine. is applied only where there is a. duty to speak. ‘It is .of course elementary that mere passivity, mere standing by in silence .... wili not work an estoppel... unless the hearer has a duty to speak .... ’ In other words, to give rise to an estoppel by silence or inaction, there must be a right and an opportunity to speak and in addition an obligation or duty to do so. J.H. Gerlach v. Noyes, [251 Mass. 558, 565 (1925)] Plymouth-Home Bank, supra at 187.
The reasons for rejecting the appellant’s estopped claim are even more compelling here than in the Plymouth-Home Bank case. Ip that case, the bank-was apparently aware of the defective Application, for the'entire two, year period but simply did not act. In the instant case, it is clear from the record that-Kelko did not become aware of the fraudulent Application until November 1981 and demanded payment shortly thereafter (in January;! 082). In addition, Kelko has reason to believe that its security interest, had perfected by virtue of the fact :that the presence of such an interest was affirmatively indicated on notices from Corbett’s motor vehicle issuer.
Moreover; assuming arguendo that Kelko did have an opportunity and duty *116 to speak, there is no evidence as to what detriment or prejudice the appellant was caused as a result of Kelko’s delay. It is unknown when or to whom Corbett transferred or otherwise disposed of the car. This court cannot speculate as to whether the appellant could or would have been able to correct the situation before Corbett transferred the automobile, at which point Kelko’s collateral was lost.
Finally, at the court in Plymouth-Home Bank, supra stated:
It seems to us that in cases where the doctrine of estoppel is applied, it should be against wrongdoers, not against the victim of a wrong. Here, the defendant breached its agreement; it is not an innocent party; estoppel should not shield it from the consequences of its breach. Id. at 188.
We believe that the above rationale is equally compelling in the instant case. For this reason, as well as the others canvassed above, we find that the appellee, Kelko, is not estopped from asserting its claim of breach of contract.
The appellant’s final argument is that the appellee is guilty of laches for failure to exercise its remedies against Jerry Rome for more than two years. The trial court found no evidence supporting this argument. The question of laches is addressed to the sound discretion of the court. Sears v. Treasures & Receiver General, 327 Mass. 310, 326 (1951). It is a quintessentially “question of fact.” Suburban Land Co. v. Town of Billerica, 314 Mass. 184 (1943). Accordingly, we believe that the trial court has not abused its discretion in failing to find' laches. See Northampton National Bank v. Don Lorenz, Inc., 1981 Mass. App. Div. 2.
There being no error, the report is dismissed.